Jeff A. MOREHEAD, et al., Plaintiffs,

v.

CITY OF PEARL,
MISSISSIPPI, Defendant.

Civ. A. No. J89–0140(B).

United States District Court,
S.D. Mississippi,
Jackson Division.

Oct. 2, 1990.

Elizabeth L. Gilchrist, Jackson, Miss., for plaintiffs.

David M. Thomas II, Gary E. Friedman, Phelps Dunbar Marks Claverie & Sim, Jackson, Miss., for City of Pearl, Miss.

### BENCH OPINION

BARBOUR, Chief Judge.

The Court has considered the Defendant's motion to exclude the Plaintiffs' evidence and direct a verdict. The Court, after a great deal of consideration, has decided to grant that motion for the following reasons:

 The history of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, as it pertains to Government employees, and specifically firefighters, is fairly well known. The Act was amended after *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), to allow cities to fit their firefighters into an exception to the overtime provisions of the Act. 29 U.S.C. § 207(k). A city can now legally subtract 8 hours of sleep time from their total hours worked on each shift provided two specified conditions are met: Number 1, that the shifts are more than 24 hours; and Number 2, that the firefighters agree to the deduction of the sleep time. 29 C.F.R. § 553.222 (1988).

The Court has seen two cases addressing this issue, *Harrison v. City of Clarksville, Tennessee*, 732 F.Supp. 804 (M.D.Tenn. 1989) and *International Association of Firefighters Local 349 v. City of Rome, Georgia*, 682 F.Supp. 522 (N.D.Ga.1988). In both of those cases the courts approached the matter as an issue of intent by the city. The Court believes that both of those cases have been wrongly decided. The Court does not think it logical to try to impose an intent test or standard on cities in this type of case where it is so obvious and so clear that the cities are adopting work rules for the very specific purpose of avoiding the paying of overtime.

The City of Pearl, Mississippi, has not put on its proof at this time. However, each of the witnesses who has testified has said that the Fire Chief met individually with him and told him that the City was not going to pay overtime and that the firefighters had a choice of either working a 24–hour, 10–minute shift or an 8–hour shift. But, if they worked the 24–hour, 10–minute shift, they would have to sign an agreement allowing the City to deduct 8 hours of sleep time in order for the City to comply with the exception under Section 7(k) of the Act. 29 U.S.C. § 207(k).

Logically to this Court, if the exception is there so that cities can avoid paying overtime, then cities intentionally will have to change their schedules and their way of doing business with firefighters if, in fact, they want to fit the exception. So, the test is not one of intention. Meeting the exception is not an evasion of the Act or an evasion of trying to pay overtime; it is a strict, straight-up avoidance scheme or plan by cities to fit within the parts of the Act which allow cities not to pay overtime to firefighters.

The Court concludes that, if it is correct that intention is not an issue, then a city could adopt any schedule that it wanted, whether it be a 24 hour on, 48 hour off; a 24 hour, 10 minute on, and a 47 hour, 50 minute off; or a combination of 8 hours and whatever other hours it would take to add up to the 53–hour total weekly work period without overtime that is allowed for firefighters. The only limitation appears to this Court to be whether, as a practical matter, a city could devise a schedule which would keep enough firefighters happy so that it could keep the fire department staffed and running. That would not be a matter of anything being unlawful under the FLSA. It would be a simple matter of economics and whether men and women would work under the specific schedule devised by a city. Accordingly, the Court concludes that the test set forth in *City of Rome* in regard to whether the change in schedule was intended to avoid the act is simply illogical and improper. If this Court is correct that there is no intent test, the City of Pearl had the right, under the FLSA and under its personnel policies, to set work schedules however it wished. It set the schedule at 24 hours and 10 minutes. There was nothing unlawful about

that. It did it for the obvious purpose of complying with the exception to the overtime provision. Accordingly, the first condition has been met by the City.

█ The second condition is whether the firefighters agree to the deduction of sleep time. We have in evidence several written agreements by the firefighters. We also have in evidence testimony that every firefighter eventually signed the exact same agreement. Accordingly, we have written agreements in evidence which state on their face that they were voluntarily signed by the firefighters. Normally this would clearly be enough to evidence the agreement by each individual firefighter to have the sleep time deducted, and that would satisfy the second condition of the Act. Here the Plaintiffs have taken the position that the signing of those agreements was coerced by the City and therefore that they are void. What the City did here was to give the firefighters a choice. They did not like the choice, but they in fact did have it. The only one who did not take the choice was Mr. Usry and he was placed on a different schedule. The choice was to either take the 24–hour, 10–minute schedule with sleep time being deducted or to take some form of 8–hour schedule. The firefighters did not know precisely what the 8–hour schedule would be. It is clear that the firefighters wanted a 24–hour on, 48–hour off schedule so that they could hold second jobs. It is clear that they could not do so with an 8–hour swing shift type of schedule, and they accordingly made a choice.

The Court sees the issue on this choice as not one of coercion, but one of the City's simply stating facts. It was not going to pay overtime. It had that prerogative. The firefighters either had the choice of taking the 24–hour, 10–minute schedule on the basis that was offered, or taking the 8–hour swing shift type of schedule, or quitting. The 8–hour schedule was not unlawful under the Fair Labor Standards Act; the 24–hour, 10–minute schedule was not unlawful under the Act. The firefighters simply had a choice. They did not like the choice. They did not like losing the over-time pay that they were earning under the old system. But, the City still had the right to fit into this exception if it could obtain the agreements from the firefighters.

The Court finds that the firefighters were not coerced into signing that agreement and that each did sign. Accordingly, the agreement was binding upon them. In regard to each of the Plaintiffs in this case, the City has fit into the exception allowed by the Act so that overtime pay is not owed.

█ The Court thinks that the case of Corby Usry, Jr., deserves special note. The Court has considered whether or not to grant a directed verdict as to Mr. Usry's case because it is clear that Mr. Usry was the only Plaintiff who did not initially sign the agreement and was the only Plaintiff who was placed on an 8–hour work schedule. Mr. Usry's evidence showed that he was used as an example and that he was treated unfairly by being placed on a very irregular schedule starting at unusual hours. The Court has considered that argument and that position. The Court, however, has concluded that the scheduling on which Mr. Usry was placed was not unlawful under the Fair Labor Standards Act in that it did not require him to work more than 53 hours in any particular week and accordingly did not incur any overtime pay for him. The City could and did work him on the schedule that it chose. Under that set of circumstances, Mr. Usry had the choice of either working or choosing other employment. In fact, what he eventually did was to accept the offer of the City not work that 8–hour unusual shift but to move back to the shift of 24 hour, 10 minutes on and 47 hours and 50 minutes off. The Court does not think that this amounted to coercion. The Court thinks that the City simply made it hard on Mr. Usry until he decided to either accept the 24–hour, 10–minute shift, or to go find employment elsewhere. The Court concludes that that does not violate the Fair Labor Standards Act.

If taken to its logical conclusion, had all of the firefighters decided not to sign, as

Mr. Usry decided, and had the City placed the firefighters on an 8–hour basis most days, plus unusual hours to fill out the 53 hours total for the work week without paying overtime, it is clear that the City would have had some very practical problems. The City would have had a group of people working unusual shifts and long hours without overtime, and that clearly would have caused problems to each of the firefighters who had outside employment. However, that would have been an economic matter for the City. It would have had to decide whether it could maintain adequate numbers of people who were willing to work under those conditions in order to provide fire protection for the City of Pearl. However, such scheduling would not have been unlawful under the Fair Labor Standards Act.

The Court accordingly concludes that what the City did here was legal under the Fair Labor Standards Act. Taking the evidence in the light most favorable to Plaintiffs, there is no issue for the jury after the conclusion of the Plaintiffs' case, and the directed verdict as to each Plaintiff should be granted in this case. This case is dismissed.