United States Court of Appeals,

Fifth Circuit.

No. 91-7374.

Timothy ALLDREAD, et al., Plaintiffs-Appellants,

v.

CITY OF GRENADA, et al., Defendants-Appellees.

April 27, 1993.

Appeal from the United States District Court for the Northern District of Mississippi.

Before JOLLY and DAVIS, Circuit Judges, and LEE,[*] District Jge.

TOM S. LEE, District Judge:

Appellants, employees of the City of Grenada, Mississippi's fire department, filed suit against the City, and against present and former city council members and management employees in their official and individual capacities, alleging that the City had violated overtime compensation provisions of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA), by refusing to pay appellants for "sleep time" in accordance with 29 U.S.C. § 207(a) and (k) and 29 C.F.R. § 553.222. They additionally demanded overtime compensation for all fire personnel holding the rank of fire captain, contending that the City had wrongly classified fire captains as salaried employees under 29 C.F.R. § 541.1 to avoid FLSA overtime provisions. Appellants asserted, alternatively, that should they not be entitled to recover full sleep time pay, they were at least entitled under § 553.222 to payment for unpaid sleep interruptions.

Upon a motion by appellees for partial summary judgment, the district court dismissed appellants' claims for sleep time compensation, holding that the claim was barred by the FLSA's three-year statute of limitations, and dismissed appellants' individual capacity claims against appellees, concluding that in their individual capacities, appellees were not FLSA employers. The court further granted summary judgment for the City on appellants' claim relating to the status of captains as exempt salaried employees. The court, however, refused to grant summary judgment for the City on

[*]District Judge of the Southern District of Mississippi, sitting by designation.

appellants' claim for interrupted sleep time compensation. Following trial, that issue was submitted to the jury, as the sole issue for its consideration, which found in favor of appellees. The district court denied appellants' motion for a new trial and this appeal followed. For the reasons that follow, we affirm the district court's disposition of appellants' claims.

BACKGROUND

In 1985, the United States Supreme Court ruled in *Garcia v. San Antonio Metropolitan Transit Authority,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), that the FLSA, including its minimum wage and overtime provisions, applies to municipalities. The FLSA exempts from its overtime provisions employers of firefighters if certain conditions are satisfied, that is, such employers are required to pay overtime only if the hours worked in a 28-day work period exceed 212 hours.[1] Further, FLSA regulations specifically address the compensability of sleep time, providing at 29 C.F.R. § 553.222(c) that a public employer may exclude sleep time of firefighters who are on a scheduled tour of duty of more than 24 hours, if, "but only if there is an expressed or implied agreement between the employer and the employees to exclude such time" from hours worked. 29 C.F.R. § 553.222(c). "In the absence of such an agreement, the sleep time is compensable." *Id.*[2] *See also Morehead v. Pearl,* 763 F.Supp. 175, 176 (S.D.Miss.1990); *Harrison v. Clarksville,* 732 F.Supp. 804, 806 (M.D.Tenn.1989); *Jacksonville Professional Fire Fighters Ass'n, Local 2961 v. Jacksonville,* 685 F.Supp. 513, 518-19 (E.D.N.C.1987); *International Ass'n of Firefighters, Local 349 v. Rome,* 682 F.Supp. 522, 529 (N.D.Ga.1988). While sleep time, therefore, can be excluded from compensable hours of work, the regulations require that sleep time which is interrupted by a call to duty must be counted as hours worked, and "[i]f the sleep time is interrupted to such an extent that the employee cannot get a reasonable night's sleep, ... the entire time must be counted as hours of

---

[1]The statute provides that firefighters must be compensated for overtime at a rate "not less than one and one half times [their] regular rate for hours worked which in the aggregate exceed the lesser of (A) 216 hours, or (B) the average number of hours (as determined by the Secretary [of Labor] ) of tours of duty of employees engaged in such activities in work periods of 28 consecutive days in calendar year 1975," 29 U.S.C. § 207(k), which the Secretary has determined to be 212, 48 Fed.Reg. 40,519.

[2]Sleep time of public agency firefighters may not be excluded from the compensable hours of work where the employee is on a tour of duty of 24 hours or less. 29 C.F.R. § 553.222(b).

work."  29 U.S.C. § 553.222(c).  Finally, as is pertinent here, the FLSA exempts from its overtime requirements salaried, executive employees, 29 U.S.C. § 213(a)(1), as that term is defined at 29 C.F.R. § 541.1.[3]

In response to *Garcia,* the City of Grenada undertook to devise a new work schedule and pay system for its fire department personnel.  Whereas fire department personnel had previously worked shifts of 24 hours on and 48 hours off, the system proposed by the City established a 28-day tour of duty with 25 hours on and 47 hours off.  Additionally, under the new system, eight hours of a shift were designated as sleep time, so that employees were no longer to be paid for their entire shift, but rather were to be paid for 17 hours of a 25-hour shift.  The new plan also designated fire captains as executive employees and changed them from hourly to salaried status.

To implement the new system, James Turner, Grenada's city manager, met with fire department personnel in August 1985.  Turner explained the system and distributed to each employee for his signature a document entitled "FLSA Agreement."  The agreements recited that the signing

---

[3]29 U.S.C. § 213(a)(1) exempts from overtime requirements "any employee employed in a bona fide executive, administrative, or professional capacity."  29 C.F.R. § 541.1 defines the term "employee employed in an executive ... capacity" to mean any employee:

> (a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department of (sic) subdivision thereof; and
>
> (b) Who customarily and regularly directs the work of two or more other employees therein;  and
>
> (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight;  and
>
> (d) Who customarily and regularly exercises discretionary powers;  and
>
> (e) Who does not devote more than 20 percent ... of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this subsection....
>
> (f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week (or $130 per week, if employed by other than the Federal Government in Puerto Rico, the Virgin Islands, or American Samoa), exclusive of board, lodging, or other facilities....

employee "underst[oo]d and agree[d] to the changes made regarding [the Fair Labor Standards Act]," including, *inter alia,* that "[s]leeping time up to eight (8) hours will be deducted from the hours in a tour of duty." The agreements further provided that "interrupted sleep time will be paid[;] if interruption is over three (3) hours, the full eight (8) hours of sleep will be counted as hours worked." Each of the appellants signed a FLSA Agreement. The City's new work schedule and pay system became effective October 4, 1985 and the first paychecks under the system were issued October 25, 1985. Appellants worked and were paid in accordance with this system for nearly four years before filing suit against the City on July 6, 1989. In their complaint, appellants alleged that the City had illegally extracted from them waivers of their right to compensation for sleep time by coercing them to sign the FLSA Agreements under threat of termination[4] and that consequently, the FLSA Agreements were void. And those individuals who held the position of fire captain charged that they were not, in fact, executive employees but rather had been pretextually classified as such by the City to avoid FLSA's overtime requirements. Thus, all appellants alleged they were entitled to receive overtime compensation for their sleep time.

ANALYSIS

I.

Though the coercion alleged by appellants, and the implementation of the City's post-*Garcia* pay plan occurred more than three years prior to their filing suit, appellants contended that their suit was not barred by the FLSA's three-year statute of limitations, 29 U.S.C. § 255(a),[5] since they were not challenging the implementation of the pay system, but rather contended that each paycheck they

---

[4]According to appellants, Turner told them they "could either sign it (the FLSA Agreements) or find another job."

[5]A two-year statute of limitations is applicable under FLSA for actions "to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages," except that "a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Though the district judge ultimately concluded that appellants had not proved a willful violation, he had not so ruled at the time of his decision on the statute of limitations issue and he therefore assumed *arguendo* applicability of a three-year statute of limitations when resolving the limitations issue. For our purposes, it makes no difference whether a two-year or three-year statute of limitations applies since in either event, appellants' claim, if it accrued at the time the City's new pay plan was implemented, would be barred.

received under the new pay system constituted a continuing violation of the FLSA and allowed them to recover for violations occurring during the limitations period. Appellees contended, and the district court agreed, that appellants' claim for sleep time compensation was time-barred since appellants' claim was based on a singular, discrete act—the City's implementation of a pay system based on allegedly void waivers—which occurred more than three years prior to appellants' filing suit. The court likewise concluded that as to those employees who held the position of fire captain at the time the new pay plan was implemented, their claims that they were not properly classified and treated as exempt employees were time-barred. This court agrees, and finds that the district court properly rejected appellants' bid to avert application of the limitations bar on the basis of a continuing violation theory.

The issue in a case such as this, where a claim is made that a continuing violation has occurred so as to, in effect, extend the time for filing suit, "is whether the reduction in pay was a single act of discrimination under the FLSA, hence barred by its three year statute of limitations, or whether the reduction effected in each subsequent paycheck constitutes a violation of the Act, thus making the complaint timely, at least in part." *Hendrix v. Yazoo City,* 911 F.2d 1102 (5th Cir.1990). As this court explained in *Hendrix,* the continuing violation theory encompasses two types of cases:

> The first includes cases in which the original violation occurred outside the statute of limitations, but is closely related to other violations that are not time-barred. In such cases, recovery may be had for all violations, on the theory that they are part of one, continuing violation.
>
> The second type of continuing violation is one in which an initial violation, outside the statute of limitations, is repeated later; in this case, each violation begins the limitations period anew, and recovery may be had for at least those violations that occurred within the period of limitations.

*Hendrix,* 911 F.2d at 1103-04 (footnotes omitted). In contrast,

> if the discrimination alleged is solely the result of a single violation that occurred outside the statute of limitations, the later effect of this act does not constitute a continuing violation of the statute.

*Id.* at 1104 (citing *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), and *Lorance v. AT & T Technologies,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989)).

Appellants cite *Halferty v. Pulse Drug Co.,* 821 F.2d 261, *modified on other grounds,* 862 F.2d 2 (5th Cir.1987), for the proposition that a challenge to a pay system under FLSA inherently charges a continuing violation. In *Halferty,* this court applied the doctrine of continuing violations to overtime and minimum wage violations under the FLSA, and allowed the plaintiff to recover for overtime hours worked dating back to the beginning of the statute of limitations period, even though the terms of her employment were entered into outside the statute of limitations. There, the court stated: "A cause of action (for the violation of the FLSA) accrues at each regular payday immediately following the work period during which the services were rendered for which the wage and overtime compensation is claimed." *Halferty,* 821 F.2d at 271 (citing *Hodgson v. Behrens Drug Co.,* 475 F.2d 1041, 1050-51 (5th Cir.), *cert. denied,* 414 U.S. 822, 94 S.Ct. 121, 38 L.Ed.2d 55 (1973)). The district court found *Halferty* inapposite, and resolved instead that this court's holding in *Hendrix v. Yazoo City,* 911 F.2d 1102 (5th Cir.1990), was "logically applicable."

In *Hendrix,* this court found that a city's unilateral reduction of the base salary of its firefighters following *Garcia,* in violation of an FLSA interim antidiscrimination measure, was a single violation of the FLSA which triggered the running of the statute of limitations. The court opined that while this pay reduction was reflected in subsequent pay packets received by the firefighters, the pay packets simply gave continuing effect to a past discriminatory act in a facially neutral manner and therefore did not constitute a continuing violation. *Hendrix,* 911 F.2d at 1105. Accordingly, the plaintiffs' claim was time-barred.

The district court properly concluded that *Hendrix,* rather than *Halferty,* provides the applicable analogy. While it often is not readily apparent whether a complaint alleges a true continuing violation of either variety described in *Hendrix* or whether it merely charges a single violation, as the district court correctly recognized, the distinction turns on "whether the practice at issue is part of, or a repetition of, a past discriminatory act, in which case there is a continuing violation, or whether it is facially neutral, simply giving effect to prior discrimination, in which case there is no continuing violation." *Hendrix,* 911 F.2d at 1104. This distinction was noted by the Supreme Court in *Lorance v. AT & T Technologies, Inc.,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d

961 (1989), where the Court held that the adoption of a facially neutral seniority system was a single violation of Title VII triggering the statute of limitations, rather than a continuing violation renewed with each paycheck. The *Lorance* Court explained:

> With a facially neutral system the discriminatory act occurs *only* at the time of adoption, for each application is nondiscriminatory.... But a facially discriminatory system ... by definition discriminates each time it is applied.

*Lorance,* 490 U.S. at 912 n. 5 109 S.Ct. at 2269 n. 5 (emphasis in original). The Court reasoned that "[b]ecause the claimed invalidity of the facially nondiscriminatory and neutrally applied ... seniority system [was] wholly dependent on" the existence of a discriminatory intent in the adoption of the system, then the date of adoption governed the limitations period. *Lorance,* 490 U.S. at 911, 109 S.Ct. at 2268. *See also Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (where the only alleged discrimination occurred at the time plaintiff was denied tenure, the statute of limitations commenced at the time of that decision, even though the effects of the denial of tenure did not occur until later); *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) ("challenge to a neutral system may not be predicated on the mere fact that a past event which has no present legal significance has affected the calculation of seniority credit, even if the past event might at one time have justified a valid claim against the employer.") This distinction provided the basis for this court's refusal in *Hendrix* to follow *Halferty, see Hendrix,* 911 F.2d at 1104,[6] and the cause for the district court's rejection of *Halferty* in the case at bar. As the district court aptly stated:

> [T]he types of violations are distinguishable as those where the employer moves from one facially valid system of pay to another valid system of pay in an improper manner or at a prohibited time, a single statutory violation, and those where an employer implements a facially invalid system and continues to pay compensation under the facially invalid system, a continuing violation.

---

[6]In *Hendrix,* the court explained:

> the distinction does not turn on the type of discrimination, but on whether the practice at issue is part of, or a repetition of, a past discriminatory act, in which case there is a continuing violation, or whether it is facially neutral, simply giving effect to prior discrimination, in which case there is no continuing violation.

*Hendrix,* 911 F.2d at 1104.

Applying this analysis, the district court concluded that the City had simply "move[d] to a facially valid post-FLSA policy from the pre-FLSA facially valid policy...."

While appellants acknowledge the significance of facial neutrality in determining whether application of a policy will be found to constitute a continuing violation, they contend that the district court erred in concluding that the City's post-*Garcia* pay policy was facially valid. Rather, according to appellants, the pay system which the City implemented is invalid on its face and can be saved only by resort to the waivers (FLSA Agreements) since, in the absence of those waivers, sleep time constitutes compensable hours of work. In the court's opinion, however, the district court properly construed the FLSA agreements or waivers as an integral part of the City's pay policy and concluded that the policy was facially valid. Under the applicable regulation, sleep time of firefighters can be excluded if two conditions are met: (1) a tour of duty of more than 24 hours *and* (2) an agreement between the employer and employee to exclude such time. 29 C.F.R. § 553.222(c). The agreement that sleep time will not be compensable is no less a part of the policy than is the 25-hour tour of duty.[7]

The sole basis for appellants' seeking to impose liability against the City for sleep time compensation is their claim that the City, in the course of devising the new pay policy, coerced them, in August 1985, to relinquish their FLSA rights under threat of termination and thereafter, in October 1985, implemented a pay system predicated on those waivers. That alleged act of coercion is the event giving rise to appellants' complaint and is patently a single violation of the FLSA. Even though the *effect* of this act was reflected in appellants' subsequent paychecks, that effect does not transform the act into a continuing violation.

Applying the test established in *Berry v. Board of Supervisors of L.S.U.,* 715 F.2d 971 (5th Cir.1983), *cert. denied,* 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986), for defining precisely *when* the act or acts of discrimination occurred, the district court concluded, and properly so, that there was a single violation which took place at the time the City's post-*Garcia* pay plan was activated. The most important factor under the *Berry* test is the "degree of permanence:"

---

[7]Indeed, as the district court cogently observed, if the FLSA agreements were not construed to be part of the City's pay policy, then "there could never be a facially valid policy" to exclude sleep time, in spite of a specific regulation allowing municipalities to do so. Such a result defies logic.

Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her right s, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?[8]

*Berry,* 715 F.2d at 981. The importance of this factor derives from the premise underlying the continuing violation doctrine, the equitable notion that the statute of limitations ought not to begin to run until facts supportive of the cause of action " "are or should be apparent to a reasonably prudent person similarly situated.' " *Glass v. Petro-Tex Chem. Corp.,* 757 F.2d 1554, 1560 (5th Cir.1985) (quoting *Dumas v. Town of Mt. Vernon,* 612 F.2d 974, 979 (5th Cir.1978)).

> " "The focus is on what event in fairness and logic should have alerted the average lay person to act to protect his rights.' " *Id.* At the same time, "the mere perpetuation of the effects of time-barred discrimination does not constitute a violation ... in the absence of independent, actionable conduct occurring within the statutory period...." *Trevino v. Celanese Corporation,* 701 F.2d 397, 403 n. 7 (5th Cir.1983) (emphasis in original). *See generally* 2A Larson, Employment Discrimination @ 48.54(c) (1984).

*Glass,* 757 F.2d at 1560. Appellants do not deny that they understood the various facets of the City's new pay policy. They do not claim that they failed to comprehend the meaning or significance of the FLSA agreements which they claim that they were coerced into signing. And unequivocally, they were aware from the receipt of their first paychecks that they were not receiving compensation for sleep time. There is no question, then, but that this event would "in fairness and logic ... have alerted the average lay person to act to protect his rights." *Id.* Their claim, therefore, having been filed more than three years later, is time-barred.[9]

---

[8]The *Berry* court identified two additional factors, "subject matter" and "frequency," but considered the "degree of permanence" the more significant of the three factors. *Berry,* 715 F.2d at 981.

[9]Appellants argue that the district court erroneously permitted the City to use the statute of limitations as a sword, rather than a shield. *See Northern Pacific Ry. Co. v. United States,* 277 F.2d 615, 623-24 (10th Cir.1960) (statute of limitations available only as shield, not as sword). That is, according to plaintiffs, the City cannot raise an alleged "waiver" by appellants of their right to sleep time compensation as an affirmative defense and yet claim at the same time that appellants' reply of "coercion" is time-barred. However, since the FLSA Agreements executed by plaintiffs, in which they explicitly waived any right to sleep time pay, form a part of the City's post-*Garcia* pay policy, it follows that "waiver" is not presented as an affirmative defense. *Cf. Morehead v. Pearl,* 763 F.Supp. 175, 177 (S.D.Miss.1990) (written agreements stating firefighters voluntarily agreed to deduction of sleep time would normally be enough to evidence agreement by each firefighter to have sleep time deducted); *International Ass'n of Firefighters, Local 349 v. Rome,* 682 F.Supp. 522, 529 (N.D.Ga.1988) (where employer has agreement with firefighters to extend required tours of duty, firefighters would have heavy burden to show that

Appellants maintain that the district court erred in failing to recognize their claim under state law for breach of their employment contracts, which they maintain would be governed by Mississippi's six-year statute of limitations for causes of action predicated on contracts of employment. *See* Miss.Code Ann. § 15-1-29. Appellants' contention in this regard is manifestly without merit. While appellants did allege in their complaint that they were not "at will" employees, the complaint cannot reasonably be construed as alleging a state law cause of action for breach of contract. That these employees were not terminable at will was obviously recited in the complaint to demonstrate that the threat to terminate their employment was coercive since they were not lawfully subject to termination for failure to sign the FLSA Agreements. Appellants did not purport to allege a separate claim based on their status as other than "at will" employees. The allegation, in short, simply formed a part of the basis for their claim that the City violated FLSA, and therefore, the court's conclusion that the FLSA statute of limitations operates to bar appellants' claims relating to the City's implementation of the new pay policy necessarily disposes of any state law issues. *See Aluminum, Brick and Glassworkers Int'l Union Local 674 v. A.P. Green Refractories, Inc.,* 895 F.2d 1053, 1054 (5th Cir.1990) (court will borrow state limitations period only where the federal statute provides no statute of limitations).

## II.

Appellants next urge that the district court erred in ordering them to return to the City audio tapes and transcripts of executive sessions containing privileged communications which the City inadvertently produced during discovery.[10] At a deposition during which the City learned that appellants possessed these materials, the City asserted the attorney client privilege and demanded a return of the materials. Upon a request by the parties for a ruling on the privilege issue, the magistrate judge ordered appellants to return the materials. In so ruling, the magistrate judge, noting the absence of Fifth Circuit authority addressing the issue of inadvertent disclosures of privileged materials, applied a five-part test gleaned from *Hartford Fire Insurance Co. v. Garvey,* 109 F.R.D.

extension was an illegitimate subterfuge).

[10]The City produced the audio tapes and appellants had the tapes transcribed.

323 (N.D.Cal.1985), under which consideration is given to all of the circumstances surrounding the disclosure, including: (1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken to remedy the error; (3) the scope of discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness. The magistrate judge concluded that the City had not taken reasonable and available precautions to protect the materials from disclosure, that the scope of the discovery was limited such that the City could reasonably have discovered any privileged materials[11] and that the disclosure was complete since appellants had become aware of the full contents of the tapes. Nevertheless, the magistrate judge concluded that other considerations outweighed those factors and favored a finding that there had been no waiver. The City had immediately asserted the attorney client privilege upon learning of the disclosure and, in the magistrate judge's view, considerations of fairness counseled in favor of ordering the materials returned. The tapes were clearly privileged and would not have been discoverable absent a waiver and furthermore, the disclosure of the tapes was obviously inadvertent. The district judge affirmed the magistrate judge's ruling as neither clearly erroneous, contrary to law nor an abuse of discretion.

Appellants argue on appeal that the district court failed to review the magistrate judge's ruling for "errors of law," as is required by Rule 72(a) of the Federal Rules of Civil Procedure, under which the court must set aside or modify orders "found to be clearly erroneous or contrary to law." Though this court reviews a district court's factual findings under a clearly erroneous standard, legal conclusions are reviewed *de novo. Chance v. Rice Univ.,* 984 F.2d 151 (5th Cir.1993); *Palmco Corp. v. American Airlines, Inc.,* 983 F.2d 681 (5th Cir.1993). The first question presented, therefore, is whether the district court applied the proper legal analysis.

ionship waives the privilege. *See Ward v. Succession of Freeman,* 854 F.2d 780 (5th Cir.1988), *cert. denied,* 490 U.S. 1065, 109 S.Ct. 2064, 104 L.Ed.2d 629 (1989); *United States v. El Paso Co.,* 682 F.2d 530 (5th Cir.1982), *cert. denied,* 466 U.S. 944, 104 S.Ct. 1927, 80 L.Ed.2d 473 (1984). There is no consensus, however, as to the effect of inadvertent disclosures of

[11]The City produced recordings of 20 city council meetings. Of those 20 tapes, appellants have pointed to only one tape recording of an executive session.

confidential communications. A few courts hold that where there has been a disclosure of privileged communications to third parties, the privilege is lost, even if the disclosure is unintentional or inadvertent. *See, e.g., In re Sealed Case,* 877 F.2d 976, 980 (D.C.Cir.1989); *In re Grand Jury Proceedings,* 727 F.2d 1352, 1356 (4th Cir.1984). The courts subscribing to this view place the risk of inadvertent disclosure on the producing party, reasoning that "the amount of care taken to ensure confidentiality to the holder of the privilege reflects the importance of that confidentiality to the holder of the privilege." *In re Sealed Case,* 877 F.2d at 980. The majority of courts, though, while recognizing that inadvertent disclosure *may* result in a waiver of the privilege, have declined to apply this "strict responsibility" rule of waiver and have opted instead for an approach which takes into account the facts surrounding a particular disclosure. *See, e.g., Transamerica Computer Co. v. International Bus. Mach. Corp.,* 573 F.2d 646, 650-52 (9th Cir.1978) (privilege waived only if privilege holder *voluntarily* discloses communication); *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.,* 116 F.R.D. 46, 50-52 (M.D.N.C.1987) (limited inadvertent disclosure will not necessarily result in waiver); *Hartford,* 109 F.R.D. at 329 (inadvertent disclosure of privileged communication may constitute waiver); *Georgetown Manor, Inc. v. Ethan Allen, Inc.,* 753 F.Supp. 936, 938-39 (S.D.Fla.1991) (inadvertent production is antithesis of concept of waiver so that mere inadvertent production by attorney does not waive client's privilege). In our view, an analysis which permits the court to consider the circumstances surrounding a disclosure on a case-by-case basis is preferable to a *per se* rule of waiver. This analysis serves the purpose of the attorney client privilege, the protection of communications which the client fully intended would remain confidential, yet at the same time will not relieve those claiming the privilege of the consequences of their carelessness if the circumstances surrounding the disclosure do not clearly demonstrate that continued protection is warranted. Accordingly, we conclude that the district court's decision to analyze the issue under the *Hartford* test was proper. The court's findings relating to the various factors identified in *Hartford* are essentially factual in nature and therefore are reviewed under a clearly erroneous standard. *See Peavey Co. v. M/V ANPA,* 971 F.2d 1168, 1174 (5th Cir.1992) (district court's factual findings will be deemed clearly erroneous only if the reviewing court

is "left with a definite and firm conviction that a mistake has been made"). *Cf. Rock v. Huffco Gas & Oil Co.,* 922 F.2d 272, 281 (5th Cir.1991) (district court's conclusion based on weighing of relevant factors under residual exception to hearsay rule will be reversed only if clearly erroneous); *In re Sealed Case,* 877 F.2d at 980-81 (determination of extent of waiver of privilege depends heavily on factual context in which privilege is asserted and will be reviewed for abuse of discretion). And though we believe that a close question was presented, we cannot say that the district court erred in finding that there was no waiver under the circumstances.[12]

## III.

Appellants maintain that the district court erred in granting a defense motion in limine to exclude the admission of testimony and reports of appellants' damages expert, Dan McClemore. The district judge excluded the expert's testimony based on his determination that appellants had not complied with Federal Rule of Civil Procedure Rule 26(e)(1)(B), which requires a party to supplement interrogatory responses with respect to "the identity of each person expected to be called as an expert witness at trial, the subject matter on which the person is expected to testify, and the substance of the person's testimony."

The record reflects that appellants designated the proposed witness, an accountant, as an expert during discovery, and advised that his testimony would address damages for interrupted sleep time. Approximately two weeks prior to trial, the City moved in limine to exclude the expert's testimony. The City objected that appellants had not produced expert reports or source data during discovery and complained further that, though appellants did advise just prior to the pretrial

---

[12]Appellants contend that the tape of a July 24, 1989 executive session of the city council contained admissions of liability. In one instance, a council member asked if the City could return to the system that was in place before the City had "messed the system up," to which counsel responded that to do so would amount to an admission of liability. In the other instance, according to appellants, one city council member remarked, "Why did we go over the line and force our employees to sign this thing?" Because the latter remark was relevant only to appellants' claim for sleep time compensation and that claim was dismissed on limitations grounds, appellants could not have been prejudiced by the district court's refusal to permit their use of the statement. Nor were appellants prejudiced by the refusal to permit them to use the former statement. That statement, that the system was "messed up," does not amount to an admission by the City of responsibility for "mess[ing] up" the system and in the court's view, the statement was not especially probative on any of the claims presented by appellants.

conference that the expert used a "reverse projection" and "scatter plot" method of averaging to arrive at damage calculations based on later documents and personal interviews with the appellants and did produce to appellees an expert report and spread sheets, the appellants' explanation of their expert's methodology was of only marginal assistance and the documents produced were useless since they lacked sufficient information to permit analysis and verification. Finally, appellees contended that the appellants' extreme delay in providing any substantive information concerning the proposed testimony of the expert deprived them of the opportunity to pursue discovery on the damages issue before trial and thus caused them significant prejudice.

Appellants argue that the district court was precluded from excluding the expert's testimony as a sanction for their having failed to respond to discovery requests, since they did provide responses to the City's expert interrogatories and the City never moved to compel any further response. Appellants maintain that they cannot be sanctioned for failure to fully respond to an interrogatory where there has been no motion to compel. Appellants' argument proceeds from Rule 37 of the Federal Rules of Civil Procedure, which relates to, *inter alia,* motions to compel for incomplete interrogatory responses and failure to fully respond to document production requests. *See Broadcast Music, Inc. v. Xanthas, Inc.,* 855 F.2d 233, 238 (5th Cir.1988) ("Sanctions such as estoppel may be imposed under Rule 37(b) for failure to produce documents only when the court has entered an order compelling discovery."). However, the applicable rule in this context is not Rule 37, relating to incomplete responses, but Rule 26(e), which defines a party's duty to supplement expert interrogatory responses. Rule 26 imposes no requirement, express or implied, that a motion to compel precede a court's imposition of a sanction (which, the Advisory Comments note, may consist of exclusion of testimony) for failure to supplement expert interrogatory responses. The only issue, therefore, is whether the district court committed manifest error in excluding the witness' testimony. *See Page v. Barko Hydraulics,* 673 F.2d 134, 139 (5th Cir.1982) ("trial court has wide discretion to admit or exclude expert testimony, and only if we determine that a ruling is manifestly erroneous may we find that discretion abused"); *see also Branch-Hines v. Hebert,* 939 F.2d 1311, 1319 (5th Cir.1991) ("trial court is afforded much discretion in deciding whether to admit or deny testimony").

This court is unable to conclude that the district court erred in finding that appellants failed in their duty to supplement their expert interrogatory responses. Information claimed by the City to be critical to its understanding of the expert's proposed testimony was first provided nine months after the close of discovery and only two weeks prior to trial. Moreover, contrary to appellants' assertion, it does not appear that the expert's proposed testimony was essential to appellants' case. Much, if not all of the relevant testimony which could have been elicited from this expert witness could have been provided by appellants themselves. During a period of time involved in this case, the City maintained records of duty calls occurring during sleep time. Those records, which provided the basis for the expert's damages computation for the period of time which they covered, were available to appellants. And, for the time period during which no records of sleep interruptions were maintained, appellants were in as good a position to arrive at a damages computation as was the expert.[13] Based on these factors, the district court did not act improperly in excluding the testimony.

## IV.

In addition to his excluding the expert accountant's testimony, the district judge granted a defense motion in limine to exclude the testimony of a labor department investigator offered by appellants. The witness, identified as an "expert" witness, was to testify concerning his findings following a Department of Labor investigation, conducted prior to the institution of the lawsuit, relating to sleep time and the exempt status of fire captains. The district court's decision to exclude the witness' testimony was not manifestly erroneous.

Appellants advise that the witness would have testified concerning his investigation as to sleep interruptions and captains' exemptions and would have testified to his conclusion that there were unpaid sleep interruptions and that captains were not properly classified as exempt. He would further have testified that the City refused a Department of Labor request for compliance. The appellants themselves testified to the facts comprising their claims for relief and there has been no suggestion that the investigator's testimony regarding factual findings would have been other than cumulative.

---

[13]It should be noted that the amount of damages for which the appellants requested the jury to render a verdict in their favor was exactly the amount of damages calculated by the expert in the excluded report.

Regarding the conclusions of his investigation, appellants represented to the district judge that the witness had only been permitted to testify by the Department of Labor upon an assurance by appellants' counsel that he would not "give opinions, legal or otherwise," but would "simply outline his investigation, what he did, who he contacted at the City, what was communicated to those officials." Thus, the witness was not to give testimony concerning his conclusions. In any event, the conclusions which appellants represent the witness would have given would have been, in the court's view, inadmissible *legal* conclusions. *See Owen v. Kerr-McGee Corp.,* 698 F.2d 236, 240 (5th Cir.1983) (Federal Rule of Evidence 704 does not permit expert to state legal conclusions).[14]

## V.

Appellants have raised a number of additional issues: (1) whether the district court erred in granting a directed verdict on the issue of whether captains were properly classified as salaried, exempt employees; (2) whether the district court erred in granting a directed verdict on the issue of willfulness; and (3) whether the district court erred in dismissing appellants' claims against city officials in their individual capacities. These issues have been rendered moot by this court's conclusion that the district court properly dismissed the claims for sleep time pay, coupled with the jury's verdict for the City on appellants' claim for compensation for sleep interrupted time. Accordingly, the court will not reach those issues.

The judgment of the district court is AFFIRMED.

---

[14]The court would observe that one of the main points about which the witness was to testify, according to appellants, was an alleged request by the Department of Labor for the City's compliance with the FLSA. Appellants intended to offer this testimony on the issue of willfulness of the City's violation. Because the jury found that there had been no violation, appellants could not have been prejudiced by the court's refusal to permit this testimony relating to willfulness.