**Joseph FIGUERAS, et al., Plaintiffs,**

v.

**PUERTO RICO ELECTRIC POWER AUTHORITY, et al., Defendants.**

**Civil No. 07–1286 (FAB).**

United States District Court, D. Puerto Rico.

Jan. 30, 2008.

**3.** *See* Docket No. 160 (Civil No. 06–1392) and Docket No. 119 (Civil No. 06–1392).

Rosa M. Nogueras, Nogueras De Gonzalez Law Office, San Juan, PR, for Plaintiffs.

Marie L. Cortes–Cortes, Ricardo X. Carlo–Marrero, Llovet Zurinaga & Lopez, PSC, Hato Rey, PR, Ana M. Margarida–Julia, Department of Justice, San Juan, PR, Ana M. Margarida–Julia, Claudia Latimer–Bengoa, Departamento De Justicia, San Juan, PR, for Defendants.

## OPINION AND ORDER

BESOSA, District Judge.

On January 9, 2008, co-defendant Puerto Rico Power Authority ("PREPA") filed a motion requesting the return of an "inadvertently" disclosed privileged document (Docket No. 108). PREPA requested a protective order directing the plaintiffs to return the inadvertently disclosed document and prohibiting the plaintiffs from inquiring into matters discussed in the document. Two days later plaintiffs filed their opposition in which they not only opposed the issuance of a protective order but they requested an order directing PREPA to release certain additional documents (Docket No. 110). On January 14, 2008, this Court issued a preliminary order pursuant to Rule 26(b)(5)(B), directing plaintiffs to return the disputed document, bates number 004510, to PREPA and to destroy any copies of the document (Docket No. 118).

For the reasons discussed below, the Court hereby **vacates** its order of January 14, 2008, and **denies** PREPA's motion for a protective order. PREPA is hereby ordered to return the document bates stamped 004510 to plaintiffs.

## FACTUAL BACKGROUND

On November 20, 2007, PREPA produced 3,400 pages of documents to plaintiffs in hard copy (Docket No. 108, p. 6). These documents were in addition to approximately

1,600 pages of documents that had already been produced; a total of approximately 5,000 pages of documents were produced (Docket Nos. 108, p. 6 & 110, p. 2).[1] An e-mail communication from PREPA's counsel to an officer of PREPA, which PREPA claims is privileged, was included among the 3,400 pages of documents produced to plaintiffs on November 20, 2007 (Docket No. 108, p. 6). PREPA's counsel became aware of her own disclosure of the e-mail on January 8, 2008 during plaintiffs' deposition of co-defendant Julio Colon (*Id.*, p. 2). PREPA's position is that the disclosure was inadvertent.

Counsel for PREPA explained that they produced hard copy documents in response to a request for production of documents served upon PREPA. (Docket No. 108, p. 7.) Prior to the production, PREPA's counsel thoroughly reviewed the documents. (*Id.* at 3.) Among the categories of documents requested by plaintiffs were files from the Occupational Health Division of PREPA. (*Id.*) Another category of documents was e-mail relating to plaintiffs' job performance. (*Id.*) Counsel for PREPA reviewed the e-mail separately from the rest of the documents provided by PREPA. (*Id.* at 5.) The inadvertently disclosed document "was placed among the documents that belonged to the Occupational Health Division." (*Id.* at 5.) PREPA's counsel notes that the produced document, bates stamped 004510, was not labeled "confidential communication," nor were the e-mails in general. (*Id.* at pp. 3, 5.) PREPA's counsel also notes that they "assessed" the documents produced and found no additional documents which were "inadvertently" produced. (*Id.* at 6.)

## DISCUSSION

As a first step, the Court must decide which approach to employ to determine whether PREPA inadvertently waived the privilege it claims. Federal courts employ three different approaches to the question of whether the inadvertent disclosure of an attorney-client privileged communication constitute a waiver of the privilege: the "never waived" approach, the "strict accountability" approach, and a balancing approach known as the "middle test." *See Amgen Inc. v. Hoechst Marion Roussel, Inc.,* 190 F.R.D. 287, 290–92 (D.Mass.2000). Under the "never waived" approach, a privilege holder must subjectively intend to waive the privilege; producing a document through mere negligence cannot effect a waiver. *See, e.g., Kansas–Nebraska Nat'l Gas Co. v. Marathon Oil Co.,* 109 F.R.D. 12, 21 (D.Neb.1983); *Mendenhall v. Barber–Greene Co.,* 531 F.Supp. 951, 954–55 (N.D.Ill.1982). At the opposite end of the spectrum, the "strict accountability" approach waives the privilege regardless of the privilege holder's intent. *See, e.g., In re Sealed Case,* 877 F.2d 976, 979–80 (D.C.Cir.1989); *Int'l Digital Systems Corp. v. Digital Equipment Corp.,* 120 F.R.D. 445, 450 (D.Mass.1988). The third approach, often referred to as the "middle test," requires the Court to consider the circumstances under which the inadvertent production of a privileged document occurred. *See, e.g., Alldread v. City of Grenada,* 988 F.2d 1425, 1434 (5th Cir.1993); *Amgen Inc. v. Hoechst Marion Roussel, Inc.,* 190 F.R.D. 287, 291 (D.Mass.2000); *Hydraflow, Inc. v. Enidine Inc.,* 145 F.R.D. 626, 637 (W.D.N.Y.1993).

Although some courts have interpreted the First Circuit Court of Appeals' decision in *Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs,* 60 F.3d 867, 883 (1st Cir.1995) as adopting the "strict accountability" approach, *see, e.g., Allstate Insurance Co. v. Gaughan,* 203 W.Va. 358, 508 S.E.2d 75, 94 (1998), this Court disagrees. In *Texaco Puerto Rico,* the court of appeals stated that "[i]t is apodictic that inadvertent disclosures *may* work a waiver of the attorney-client privilege." 60 F.3d at 883 (emphasis added). As Chief Judge Young from the District of Massachusetts stated, the word "may" indicates that the district court has discretion, which is unavailable under the strict accountability approach. *Amgen,* 190 F.R.D. at 291; *see also Marrero Hernandez v. Esso Standard Oil Co.,* 2006 WL 1967364, *2 (D.P.R.2006). Therefore, district courts within the first cir-

---

1. PREPA repeatedly refers to "five thousand documents" as the number of documents disclosed. Plaintiffs clarify that the number 5000 refers to the number of pages of documents that PREPA produced and not the number of documents. (Docket No. 110, p. 2.)

cuit are not bound to follow the "strict accountability" approach. This Court shall follow the majority approach, and apply the "middle test." *See Alldread,* 988 F.2d at 1434.

▮ The "middle test" allows the Court to consider various factors surrounding the circumstances of the inadvertent production including: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the amount of time it took the producing party to recognize its error, (3) the scope of the production, (4) the extent of the inadvertent disclosure, and (5) the overriding interest of fairness and justice. *Amgen,* 190 F.R.D. at 291. The Court may also consider the degree to which the disclosed communication has been relied upon by the recipient of the production, which this Court interprets as an aspect of fairness and justice. *Hydraflow,* 145 F.R.D. at 637. Whether the inadvertent disclosure caused a waiver of privilege depends upon the totality of these factors.

▮ The reasonableness of the precautions taken by PREPA is difficult to ascertain from its filing. PREPA notes that "an assessment of the categories of documents that were delivered was done." (Docket No. 108, p. 5.) PREPA notes that its counsel "verified the e-mail communications" produced apart from the rest of the documents produced, yet by some unexplained means, the privileged communication was placed among documents belonging to a separate category, Occupational Health Division related documents.[2] *(Id.)* The only other explanation offered by PREPA that the Court understands to touch upon the reasonableness of precautions taken to prevent inadvertent disclosure is that the document was not labeled a "confidential communication." Whether PREPA expected the document to be labeled as such by the authors of the

document, or later on by a lawyer who reviewed the document to make a privilege determination, is unclear to the Court. Under either scenario, it was the responsibility of PREPA's counsel to identify all privileged documents, hold them apart from the rest of the responsive and non-privileged documents, and create a log for the plaintiffs in which PREPA identified the privileged items and provided a basis for the asserted privilege. PREPA has provided no straightforward explanation of the steps taken to ensure that no privileged document would be produced beyond the perfunctory statement that all documents produced were reviewed by counsel "to the best of their ability." (Docket No. 108, p. 3.) On the record before it, the Court finds that PREPA did not take reasonable precautions to avoid disclosure of privileged documents.

▮ A second consideration is the amount of time it took PREPA to realize its error. More than a month and a half (from November 20 to January 9) passed between PREPA's production of the privileged communication and its request for the return of the privileged document. (Docket No. 108, p. 6.) This is a long period of time to pass. Moreover, PREPA only became aware that it had produced a privileged communication when its counsel saw that a co-defendant in the case was presented with the document in a deposition. *Cf. Amgen,* 190 F.R.D. at 292–93 (finding waiver where the producing party recognized its error after five days and only once opposing counsel notified the producing party); *Fleet Nat'l Bank v. Tonneson & Co.,* 150 F.R.D. 10, 16 (D.Mass.1993) (finding no waiver of a document protected by work product privilege where the producing party realized its mistake "within a few days" and before the inadvertently reviewed document was delivered to opposing counsel). The passage of a month and a half before PREPA moved for the return of the privileged docu-

---

**2.** Plaintiffs note that PREPA did not produce a privilege log (Docket No. 110, p. 11), which means that PREPA either found no privileged documents, or PREPA did not comply with its discovery obligation to produce a log for privileged and withheld documents. It seems unlikely to the Court that no other potentially privileged material would have fallen within the scope of the discovery requests. After all, the

document in question is an e-mail chain that has two responses to the initial communication. Earlier and possibly later versions of this same document would presumably exist in PREPA's database and would also fall within the scope of the discovery request. Those prior versions of the communication as well as later ones, if they exist, should have been reviewed by PREPA's counsel.

ment weighs in favor of finding a waiver. The month and a half was more than enough time for PREPA to review its production and to realize its error.

As a third area of inquiry, the Court looks at the scope of the production. PREPA produced over five thousand pages of documents (Docket Nos. 108, p. 6 & 110, p. 2). Three thousand four hundred of those documents were reviewed and produced within the period of one week and the privileged communication appears to have been among those documents (Docket No. 108, p. 5). PREPA has not notified the Court as to the total number of documents it reviewed (assuming that a number of the documents reviewed were found to be non-responsive). By today's standards, reviewing three thousand four hundred pages of documents in a week, or a total of five thousand pages of documents altogether is not an unusually onerous task. *Cf., Amgen,* 190 F.R.D. at 293 (referring to a review of over 200,000 documents and a production of more than 70,000 documents). Therefore, taking into consideration that PREPA did not produce an unusually large number of documents, this factor also weighs in favor of finding a waiver of privilege.

A fourth area of inquiry, the extent of the inadvertent disclosure, weighs in favor of finding there was no waiver because it appears that only one document was erroneously produced. While plaintiffs have alleged that PREPA has not complied with other responsibilities under the discovery rules, there is no averment from any party that PREPA inadvertently produced more than one potentially privileged document.

A fifth and final area of inquiry is the extent to which a finding of waiver would affect the overriding interest of fairness and justice. As mentioned above, plaintiffs have had the inadvertently produced communication for over a month and a half. During that time period, plaintiffs came to rely upon that document as evidenced by the use of the document in the deposition of co-defendant Colon. Prohibiting plaintiffs from using the document at this stage in the proceedings would work an injustice upon them because they have already incorporated it into their pre-trial preparation.

The Court is not blind to the possibility that PREPA may be disadvantaged by the finding of waiver. Nonetheless, a determination of "the overreaching issue of fairness" involving the protection of an attorney-client privileged communication, "must be judged against the care or negligence with which the privilege is guarded with care and diligence or negligence and indifference." *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 104 F.R.D. 103, 105 (S.D.N.Y.1985); *c.f., Hydraflow,* 145 F.R.D. at 638 (holding that it would be unfair to find a waiver of privilege where documents were identified as privileged and then they were later inadvertently produced through an "office failure," and there was no significant reliance shown by the recipient of the production). As discussed above, the lack of explanation regarding measures designed to prevent the production of privileged documents, the limited scope of the production and the passage of over a month and a half before PREPA became aware of the inadvertent production are indicative of negligence, not diligence. Therefore, the Court finds that the overriding interest of fairness and justice is best served by finding that PREPA waived the privilege over the inadvertently produced document in this case.

On the whole, only one factor considered under the "middle test" favored a finding of no waiver of privilege. Although the middle test does not require a strict counting of the factors weighing in favor and against a finding of waiver, the Court believes that these factors demonstrate that the balance of equities in this case weigh heavily in favor of finding that PREPA waived its privilege over the disputed communication. Accordingly, the Court holds that PREPA waived its attorney-client privilege in relation to the document bates stamped 004510, and orders its return to plaintiffs.

Nevertheless, that holding does not end the matter. The Court shall determine the extent of the subject matter waiver premised upon the inadvertent disclosure in a soon-to-be-scheduled hearing. PREPA is warned that it shall have to make a strong showing

to avoid waiver of "all other such communications on the same subject." *Texaco Puerto Rico, Inc.,* 60 F.3d at 883–84.

## CONCLUSION

For the foregoing reasons, co-defendant PREPA's motion for a protective order regarding the document bates stamped 004510 is **denied.** The Court's January 14, 2008 order (Docket No. 118) is **vacated.** PREPA is hereby ordered to return the document bates stamped 004510 to the plaintiffs. The Court shall address the additional discovery related concerns raised by plaintiffs' counsel (Docket No. 110) in a soon to be scheduled hearing.

IT IS SO ORDERED.