Francis FERKO and Russell Vaughn, as Shareholders of Speedway Motorsports, Inc., Plaintiffs,

v.

NATIONAL ASSOCIATION FOR STOCK CAR AUTO RACING, INC., International Speedway Corporation, and Speedway Motorsports, Inc., Defendants.

No. 4:02–CV–50.

United States District Court, E.D. Texas, Sherman Division.

Oct. 17, 2003.

Michael D. Hausfeld, Robert Joseph Barton, Brent W. Landau, Daniel A. Small, Cohen, Milstein, Hausfeld & Toll, Washington, DC, Grace Ann Weatherly, Richard William Wood, Wood Thacker & Weatherly, Denton, TX, Samuel A. Cherry, Jr., Angela J. Mason, Cochran, Cherry, Givens & Smith, Dothan, AL, Raymond J. Farrow, Mark A. Griffin, Lynn L. Sarko, Keller Rohrback LLP, Seattle, WA, Stephen H. Echsner, Meghan McCormick Tans, James M. Messer, Levin Papantonio Thomas Mitchell Echsner & Proctor, Pensacola, FL, Alexander M. Clem, Melvin B. Wright, Keith R. Mitnik, Morgan Colling & Gilbert, Orlando, FL, Alexander M. Clem, Melvin B. Wright, Keith R. Mitnik, Morgan Colling & Gilbert, Orlando, FL, for plaintiffs.

Clyde Moody Siebman, Siebman Reynolds & Burg LLP, Sherman, TX, Larry Dean Carlson, Calvin Roderick Pehlan, Baker Botts LLP, Dallas, TX, Stuart H. Singer, Gregory S. Slemp, Boies Schiller & Flexner, Fort Lauderdale, FL, Marianne Fogarty, Alan B. Vickery, Philippe Z. Selendy, Alexa S. Bator, Boies Schiller & Flexner, New York City, Helen M. Maher, David Feuerstein, Boies Schiller & Flexner, Armonk, NY, Rodney Akcer, Jenkens & Gilchrist, Dallas, TX, Barry J. Brett, Gilbert C. Hoover, IV, Jenkens & Gilchrist, New York City, Jim E. Cowles, Cowles & Thompson, Dallas, TX, Fred T. Lowrance, Charlotte, NC, Melanie Black Dubis, Parker, Poe, Adams & Bernstein, Raleigh, NC, for defendants.

*MEMORANDUM OPINION AND ORDER **GRANTING IN PART** PLAINTIFFS' OPPOSED MOTION TO COMPEL DEFENDANT INTERNATIONAL SPEEDWAY CORPORATION TO PRODUCE DOCUMENTS AND **GRANTING IN PART** DEFENDANT INTERNATIONAL SPEEDWAY CORPORATION'S MOTION FOR PROTECTIVE ORDER*

SCHELL, District Judge.

Before the court are the following written submissions:

a) "Plaintiffs' Opposed Motion to Compel Defendant International Speedway Corporation ("ISC") to Produce Documents" (Dkt. # 134), filed on August 18, 2003;

b) "Defendant International Speedway Corporation's Motion for Protective Order" (Dkt. # 137), filed on August 20, 2003;

c) "Plaintiffs' Memorandum in Opposition to Defendant International Speedway Corporation's Motion for Protective Order" (Dkt. # 138), filed on August 25, 2003;

d) "Defendant International Speedway Corporation's Reply to Plaintiffs' Response in Opposition to International Speedway Corporation's Motion for Protective Order" (Dkt. # 148), filed on September 2, 2003;

e) "Defendant International Speedway Corporation's Response to Plaintiffs' Motion to Compel and Request for Oral Hearing" (Dkt. # 154), filed on September 5, 2003;

f) "Plaintiffs' Reply in Support of Their Motion to Compel Defendant International Speedway Corporation to Produce Documents" (Dkt. # 167), filed on September 17, 2003;

g) "Defendant International Speedway Corporation's Sur–Reply to Plaintiffs' Reply in Support of Their Motion to Compel" (Dkt. # 173), filed on September 22, 2003;

h) "Plaintiffs' Notice of Filing of Supplemental Material in Support of Their Opposed Motion to Compel Defendant International Speedway Corporation to Produce Documents" (Dkt. # 177), filed on October 7, 2003; and

i) "Plaintiffs' Motion for Leave to File Supplemental Material in Support of Their Motion to Compel Defendant International Speedway Corporation to Produce Documents" (Dkt. # 179), filed on October 14, 2003.

After careful consideration, the court is of the opinion that Plaintiffs' opposed motion to compel should be GRANTED IN PART. ISC's motion for a protective order is also GRANTED IN PART.

1. After reviewing ISC's 10–K filing for the fiscal year ending November 30, 2001, the SEC issued a comment letter to ISC that questioned, in part, ISC's adoption of SFAS No. 142. *Id.*, Ex. C

## I. FACTUAL AND PROCEDURAL BACKGROUND

ISC is a publicly traded corporation on the NASDAQ stock exchange. Def.'s Resp. to Pls.' Mot. to Compel, Ex. C (Decl. of Glenn R. Padgett at ¶ 2). Consequently, ISC must comply with the standards set by the Financial Accounting Standards Board ("FASB") in order to file reports with the Securities and Exchange Commission ("SEC"). *Id.*, Ex. C (Decl. of Glenn R. Padgett at ¶ 3). In June 2001, the FASB issued Statement of Financial Accounting Standards ("SFAS") Nos. 141 and 142. *Id.*, Ex. C (Decl. of Glenn R. Padgett at ¶ 3). Both SFAS 141 and SFAS 142 concern the valuation of intangible assets. Pls.' Mot. to Compel at 134. Additionally, SFAS 142 would result in "a write down of certain goodwill and other intangible assets at the time of adoption." *Id.*, Ex. C (Decl. of Glenn R. Padgett at ¶ 5). ISC adopted SFAS 142 in connection with a registered public offering. *Id.* at 6. Consequently, ISC's Chief Counsel of Operations, Glenn R. Padgett ("Padgett"), believed that greater scrutiny of ISC's financial statements could be forthcoming. *Id.* at 6–7.

Padgett retained American Appraisal Associates ("AAA"), an independent appraisal firm, to advise him on the effect of SFAS Nos. 141 and 142 on ISC's financial statements. *Id.* at 7. In particular, Padgett "retained AAA to investigate and appraise the economic value of sanction agreements for races held at its tracks." Pls.' Mot. to Compel at 2. Padgett thought ISC was "taking an aggressive position with regard to the amount of intangibles to be written off with the adoption of SFAS 142." Def.'s Resp. to Pls.' Mot. to Compel, Ex. C (Decl. of Glenn R. Padgett at ¶ 6). Thus, Padgett sought AAA's assistance in defending ISC's position regarding the valuation of sanction agreements. *Id.*, Ex. C (Decl. of Glenn R. Padgett at ¶ 5). ISC believed that issue would arise if the SEC initiated adversary proceedings. *Id.*, Ex. C (Decl. of Glenn R. Padgett at ¶ 5).[1]

(Decl. of Glenn R. Padgett at ¶ 12). ISC responded to the SEC's comment letter on May 3, 2002 and on August 27, 2002. *Id.*, Ex. C (Decl. of Glenn R. Padgett, Exs. 3 & 4). The SEC took

ISC and AAA signed a confidentiality agreement covering all communications related to the contract between ISC and AAA. *Id.,* Ex. C (Decl. of Glenn R. Padgett at ¶ 9). Padgett also made available to Ernst & Young, LLP ("Ernst & Young") the documents that AAA had prepared and reviewed regarding SFAS Nos. 141 and 142. *Id.,* Ex. C (Decl. of Glenn R. Padgett at ¶ 14). Ernst & Young utilized this information to audit ISC's financial statements. *Id.,* Ex. C (Decl. of Glenn R. Padgett at ¶ 14). ISC also signed a confidentiality agreement with Ernst & Young. *Id.,* Ex. C (Decl. of Glenn R. Padgett at ¶ 14, 15).

On December 20, 2002, Plaintiff Francis Ferko served ISC with Plaintiff's First Request for Production of Documents. Pls.' Mot. to Compel at 1. Request No. 59 of Plaintiffs' First Request for Production of Documents sought "[a]ll documents reflecting, referring or relating to the economic value or valuation of a Winston Cup race." *Id.* On January 22, 2003, ISC served its Objections and Responses to Plaintiff's First Request for Production of Documents. Def.'s Resp. to Pls.' Mot. to Compel, Ex. A (Def.'s Objections and Resps. To Pl.'s First Req. for Produc. of Docs., p. 29). ISC objected to Request No. 59 "on grounds it is vague and ambiguous and fails to identify the information sought with reasonable particularity. . . ." *Id.,* Ex. A (Def.'s Objections and Resps. To Pl.'s First Req. for Produc. of Docs., p. 29).

Despite this objection, ISC produced approximately 63,000 pages of documents to Plaintiffs by March 2003. *Id.,* Ex. B (Decl. of Guy I. Wade, III at ¶ 2). ISC, however, inadvertently produced two documents to Plaintiffs that involved AAA. *Id.* at 2. The first document is a draft report from AAA entitled "International Speedway Corporation: Fair Value of Certain Identified Intangible Assets for Continued Use As of December 1, 2001." *Id.* ISC produced this document inadvertently to respond to Re-

quest No. 62, which requested "[y]our audited and unaudited financial statements, including income statements, balance sheets and operating statements." *Id.,* Ex. A (Def.'s Objections and Resps. To Pl.'s First Req. for Produc. of Docs., p. 29).[2] The second document is an email by an ISC employee to another ISC employee regarding changes in the draft report. *Id.* at 2. ISC produced this document inadvertently in response to Request Nos. 40, 59, and 61. *Id.;* *see also id.,* Ex. A (Def.'s Objections and Resps. To Pl.'s First Req. for Produc. of Docs., pp. 21, 29).[3]

After inadvertently producing these two documents, ISC quickly requested that Plaintiffs return these two documents. *Id.,* Ex. B (Decl. of Guy I. Wade, III, Ex. 1 (Letter of April 18, 2003 from Guy I. Wade, III to Samuel A. Cherry, Jr., Esq. & Daniel A. Small, Esq., pp. 1–2)). ISC claimed that both documents were protected by the attorney-client privilege and by the work-product doctrine. *Id.,* Ex. B (Decl. of Guy I. Wade, III, Ex. 1 (Letter of April 18, 2003 from Guy I. Wade, III to Samuel A. Cherry, Jr., Esq. & Daniel A. Small, Esq., pp. 1 2)). Plaintiffs, however, requested additional information regarding why ISC considered these two documents privileged. *Id.,* Ex. B (Decl. of Guy I. Wade, III at ¶ 8). Pursuant to the Confidentiality Stipulation and Order established in this case, Plaintiffs had to file a motion within 15 business days of receipt of ISC's documents to contest ISC's claims of attorney-client privilege and work-product immunity. Confidentiality Stipulation & Order at ¶ 15 (Dkt. # 91).

Plaintiffs did not file a motion contesting ISC's claims. ISC, however, did not seek return of the two documents. Def.'s Resp. to Pls.' Mot. to Compel., Ex. B (Decl. of Guy I. Wade, III, Ex. 2 (Letter of June 5, 2003 from Guy I. Wade, III to Samuel A. Cherry, Jr., Esq. & Daniel A. Small, Esq., p. 1)). On July 17, 2003, Plaintiffs requested that ISC

---

no further action regarding ISC's adoption of SFAS No. 142.

**2.** This document is Bates-stamped ISC 00033518–33584. Def.'s Resp. to Pls.' Mot. to Compel at 2.

**3.** This document is Bates-stamped ISC 00033585. Def.'s Resp. to Pls.' Mot. to Compel at 2.

produce "all documents relating or referring to the investigation and/or appraisal of sanction agreements as intangible assets pursuant to Statement of Financial Accounting Standards Nos. 141 and/or 142, including all reports, studies, correspondence, and other documents received from or provided to American Appraisal Associates ("AAA")." *Id.*, Ex. B (Decl. of Guy I. Wade, III, Ex. 3 (Letter of July 17, 2003 from Brent W. Landau to Guy I. Wade, Esq., p. 1)). Apparently, this request encompassed the two documents that ISC had inadvertently produced. ISC responded promptly, claiming that ISC's decision not to seek return of both documents in connection with the December 20, 2002 request for production "did not mean that ISC concluded they were not privileged or that any similar documents were not privileged." *Id.*, Ex. B (Decl. of Guy I. Wade, III, Ex. 4 (Letter of July 18, 2003 from Guy I. Wade, III to Brent W. Landau, p. 1)).

One week later, this exchange of letters continued when Plaintiffs claimed that ISC had "never articulated a sufficient basis for its position that these [two] documents ... are privileged." *Id.*, Ex. B (Decl. of Guy I. Wade, III, Ex. 5 (Letter of July 25, 2003 from Brent W. Landau to Guy I. Wade, III, p. 1)). On the same day, Plaintiffs served AAA with a subpoena requesting that AAA produce all communications with ISC and all documents regarding "the investigation and/or appraisal of sanction agreements as intangible assets pursuant to SFAS Nos. 141 and/or 142." *Id.*, Ex. E (Subpoena Issued to AAA, p. 6). ISC objected to this subpoena, claiming that the documents requested by Plaintiffs are protected by the attorney-client privilege and the work-product doctrine. *Id.*, Ex. F (Def.'s Mot. to Quash Subpoena Served on AAA, p. 2). Plaintiffs also served Ernst & Young with a subpoena on July 30, 2003, requesting information similar to that requested in the AAA subpoena. *Id.*, Ex. G (Subpoena Issued to Ernst & Young, pp. 5–6). ISC objected to this subpoena on the same grounds as its objection to the AAA

subpoena and claimed that the documents requested by Plaintiffs are irrelevant to this case. *Id.*, Ex. H (Def.'s Mot. to Quash Subpoena Served on Ernst & Young, p. 12).[4]

On July 31, 2003, Plaintiffs served ISC with a Rule 30(b)(6) Deposition Notice. Def.'s Mot. for Protective Order, Ex. A (Pls.' Rule 30(b)(6) Dep. Notice, p. 1). Plaintiffs' Notice stated that depositions would begin on August 21, 2003. *Id.* The depositions to be conducted by Plaintiffs covered numerous topics. *Id.*, Ex. A (Pls.' Rule 30(b)(6) Dep. Notice, pp. 2–6) The topics at issue here are listed as follows:

1. The organizational structure of ISC, including the identity of each current and former officer, employee, and/or agent having any supervisory and/or managerial responsibility for: ...

 b. revenues and profits from Winston Cup races;

 c. investigation and/or appraisal of sanction agreements as intangible assets pursuant to Statement of Financial Accounting Standards Nos. 141 and/or 142; ...

2. The relationship between NASCAR and ISC with respect to:

 a. sanctioning Winston Cup races at motorsports facilities; ...

4. ISC's revenues and profits from Winston Cup races.

5. The investigation and/or appraisal of sanction agreements as intangible assets pursuant to Statement of Financial Accounting Standards Nos. 141 and/or 142.

6. ISC's growth, expansion, and development of new markets, including but not limited to: ...

 k. ISC's investigation and analysis of acquiring the Indy Racing League; and

 l. ISC's investigation and analysis of acquiring or merging with NASCAR.

9. ISC's views, assessments, and opinions about the qualities, characteristics, advantages, and disadvantages of each motor-

---

**4.** Plaintiffs' subpoena to AAA was issued by the United States District Court for the Northern District of Georgia. Plaintiffs' subpoena to Ernst & Young was issued by the United States District Court for the Middle District of Florida. Plain-

tiffs and ISC have requested that both courts defer ruling on those two subpoenas until this court decides the issues raised by Plaintiffs' motion to compel and by ISC's motion for a protective order.

sports facility that currently hosts, has hosted, seeks to host, or is capable of hosting a Winston Cup race. *Id.,* Ex. A (Pls.' Rule 30(b)(6) Dep. Notice, pp. 2–5).

Pursuant to Rule 30(b)(6), ISC was to designate the person most knowledgeable about all topics in Attachment A of Plaintiffs' Notice. *Id.,* Ex. A (Pls.' Rule 30(b)(6) Dep. Notice, p. 1).

ISC designated James C. France to testify on topics 2(c), (d), (e), and (f), 6(c), (e), and (h), 10(a), (b), (c), and (d), and 11(a), (b), (c), and (d). *Id.,* Ex. C (Letter of August 15, 2003 from Melissa J. Swindle to Brent Landau, Esq., p. 1). On August 15, 2003, ISC designated persons to testify for topics 1(a), (d), (e), and (f), 2(b), 3, 6(a), (b), (d), (f), (g), (i), and (j), 7, 8, 12, and 13. *Id.,* Ex. C (Letter of August 15, 2003 from Melissa J. Swindle to Brent Landau, Esq., pp. 1–2). ISC, however, objected to topics 1(b), 1(c), 4, and 5 on the grounds "that they are not relevant and/or are privileged or constitute confidential and competitive trade secret information." *Id.,* Ex. C (Letter of August 15, 2003 from Melissa J. Swindle to Brent Landau, Esq., p. 1). Regarding topics 2(a), 6(k), and 6(*l*), ISC only stated that it "ha[d] no institutional knowledge regarding th[ese] topics." *Id.,* Ex. C (Letter of August 15, 2003 from Melissa J. Swindle to Brent Landau, Esq., pp. 1, 2). Finally, ISC claimed it had "not formed such views and/or opinions" concerning topic 9. *Id.,* Ex. C (Letter of August 15, 2003 from Melissa J. Swindle to Brent Landau, Esq., p. 2).

On August 18, 2003, Plaintiffs filed an opposed motion to compel ISC to "fully and completely respond to Request No. 59 propounded by Plaintiffs in their First Request for Production of Documents to Defendants NASCAR and ISC on December 20, 2002." Pls.' Mot. to Compel at 1. Specifically, Plaintiffs requested that ISC "produce all documents relating or referring to the investigation and/or appraisal of sanction agreements as intangible assets pursuant to Statement of Financial Accounting Standards ("SFAS") Nos. 141 and/or 142, including all reports, studies, correspondence, and other documents received from or provided to American

Appraisal Associates ("AAA")". *Id.* Plaintiffs' Motion to Compel addresses the same subject matter as topics 1(c) and 5 in Plaintiffs' Notice. Def.'s Mot. for Protective Order, Ex. A (Pls.' Rule 30(b)(6) Dep. Notice, pp. 3–4).

ISC responded by filing a motion for protective order on August 20, 2003, claiming that the documents sought by Plaintiffs regarding topics 1(c) and 5 are protected by both the attorney-client privilege and the work product doctrine. Def.'s Mot. for Protective Order at 2–3. ISC also argued that the testimony requested by Plaintiffs regarding topics 1(b) and 4 is both irrelevant and highly prejudicial. *Id.* at 3–4. On August 25, 2003, Plaintiffs filed a response to ISC's motion for a protective order. ISC then filed a reply to Plaintiffs' response to ISC's motion for a protective order on September 2, 2003, and a response to Plaintiffs' motion to compel on September 5, 2003. Plaintiffs filed a reply to ISC's response to Plaintiffs' motion to compel on September 17, 2003. ISC filed a sur-reply to Plaintiffs' reply to ISC's response to Plaintiff's motion to compel on September 22, 2003.

## II. LEGAL STANDARDS

### A. DISCOVERY

Under the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, *not privileged,* that is *relevant* to the claim or defense of any party. . . ." FED. R. CIV. P. 26(b)(1) (emphasis added). The definition of "relevant information" in Rule 26(b)(1) is broad. "Relevant information need not be admissible at the trial if the discovery appears *reasonably calculated to lead to the discovery of admissible evidence.*" *Id.* (emphasis added). Courts construe discovery rules liberally to serve the purposes of discovery: providing the parties with information essential to the proper litigation of all relevant facts, eliminating surprise, and promoting settlement. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978).

## B. RULE 30(b)(6)

A party served with a Rule 30(b)(6) deposition notice must respond in one of two ways. *See* FED.R.CIV.P. 37(D). First, a party can designate a person to testify at a deposition. *Id.; see also Bregman v. District of Columbia,* 182 F.R.D. 352, 355 & n. 3 (D.D.C.1998). Then, the person designated "shall testify as to matters known or reasonably available to the organization." FED.R.CIV.P. 30(B)(6). Second, a party may move for a protective order "for good cause shown." FED.R.CIV.P. 26(c); *see also* FED.R.CIV.P. 37(D). If a party doesn't designate a person to testify at a deposition or move for a protective order, that party has violated Rule 37(d). FED. R.CIV.P. 37(d); *Bregman,* 182 F.R.D. at 355. District courts remedy Rule 37(d) violations by requiring the violating party to pay the other party's reasonable expenses, including attorney's fees. FED.R.CIV.P. 37(d); *see also Fed. Sav. & Loan Ins. Corp. v. Village Creek Joint Venture,* 130 F.R.D. 357, 358 (N.D.Tex. 1989). District courts may also enter an order against that party. FED.R.CIV.P. 37(d).

## C. MOTION FOR A PROTECTIVE ORDER

A party seeking a Rule 26(c) protective order prohibiting deposition testimony and document production must establish good cause and a specific need for protection. *Landry v. Air Line Pilots Ass'n,* 901 F.2d 404, 435 (5th Cir.1990). "Good cause" exists when justice requires the protection of "a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* (quoting FED.R.CIV.P. 26(c)). The burden is upon the movant to prove the necessity of a protective order, "which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *United States v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir.1978) (citations omitted). If both of these requirements are proven, the court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden and expense." FED R. CIV. P. 26(c). If a district court denies a motion for a protective order in whole or in part, the court may, "on such terms and conditions as are just, order that any party or other person provide or permit discovery." *Id.* In deciding whether to grant a motion for a protective order, the court has significant discretion. *Harris v. Amoco Prod. Co.,* 768 F.2d 669, 684 (5th Cir.1985).

## D. ATTORNEY–CLIENT PRIVILEGE

### 1. IN GENERAL

In cases where a federal question exists, the federal common law of attorney-client privilege applies even if complete diversity of citizenship is also present. *Caver v. City of Trenton,* 192 F.R.D. 154, 159–60 (D.N.J.2000); *Smith v. Smith,* 154 F.R.D. 661, 671 (N.D.Tex.1994). The attorney-client privilege prevents disclosure of communications between an attorney and client that were made while seeking or rendering legal services. *See Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Information and facts contained within the communications, however, are not protected. *In re LTV Sec. Litig.,* 89 F.R.D. 595, 603 (N.D.Tex.1981). The privilege applies whether an attorney works at a law firm or works as in-house counsel for a corporation. *See, e.g., In re Sealed Case,* 737 F.2d 94, 99 (D.C.Cir.1984) (concluding that status as an in-house attorney "does not dilute the privilege," but stating that the privilege applies only if the attorney gave advice "in a professional legal capacity"); *cf. Upjohn Co.,* 449 U.S. at 390, 101 S.Ct. 677 ("[T]his Court has assumed that the privilege applies when the client is a corporation . . . ." (citation omitted)).

The elements necessary to establish that material is protected by the federal attorney-client privilege are listed as follows:

(1) the asserted holder of the privilege is or sought to become a client;

(2) the person to whom the communication was made is

(a) a member of a bar of a court, or his subordinate, and

(b) in connection with this communication is acting as a lawyer;

(3) the communication relates to a fact of which the attorney was informed

 (a) by his client

 (b) without the presence of strangers

 (c) for the purpose of securing primarily either

 (i) an opinion on law or

 (ii) legal services

 (iii) or assistance in some legal proceeding, and

 (d) not for the purpose of committing a crime or tort; and

(4) the privilege has been

 (a) claimed and

 (b) not waived by the client.

*United States v. Mobil Corp.*, 149 F.R.D. 533, 536 (N.D.Tex.1993) (quoting *LTV*, 89 F.R.D. at 600). The burden is on the party asserting the privilege to demonstrate how each document satisfies all the elements of the privilege. *See Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir.1985). Additionally, the party asserting the attorney-client privilege must prove that waiver by breach of confidentiality did not occur. *Id.*

## 2. DISCLOSURE TO FINANCIAL PROFESSIONALS

 Disclosure of attorney-client communications to a third party who lacks a common legal interest waives the attorney-client privilege. *In re Auclair*, 961 F.2d 65, 69 (5th Cir.1992); *see also United States v. Ackert*, 169 F.3d 136, 139 (2d Cir.1999). Additionally, a client's disclosure of confidential documents directly to a third party destroys confidentiality and attorney-client privilege protection for those documents. *United States v. El Paso Co.*, 682 F.2d 530, 540 (5th Cir.1982). Though the attorney-client privilege is firmly enshrined in federal law, *Up-*

*john Co.*, 449 U.S. at 389, 101 S.Ct. 677, "no confidential accountant-client privilege exists under federal law." *Couch v. United States*, 409 U.S. 322, 335, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973); *see also El Paso Co.*, 682 F.2d at 540; *United States v. Davis*, 636 F.2d 1028, 1043 (5th Cir. Unit A 1981). Thus, a client's disclosure of documents directly to an auditor, accountant or tax analyst destroys confidentiality with respect to those documents. *El Paso Co.*, 682 F.2d at 540; *United States v. Miller*, 660 F.2d 563, 570 (5th Cir.1981). If a client seeks only accounting services instead of legal advice, "or if the advice sought is the accountant's rather than the lawyer's, no privilege exists." *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir.1961) (Friendly, J.).

An exception to this rule exists for third parties who assist an attorney in rendering legal advice. *Id.* at 922.[5] Because the practice of law has increasingly grown more complex, attorneys cannot function effectively without the help of others. *Id.* at 921. Thus, in *Kovel*, Judge Friendly held that the attorney-client privilege "must include all other persons who act as the attorney's agents." *Id.* at 921 (citations omitted). This logic extends to financial professionals such as accountants. *See id.* at 921–22. Often, "the presence of the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." *Id.* at 922 (footnote omitted). When an attorney "retains an accountant as a listening post," *id.*, or "direct[s] the client ... to tell his story in the first instance to an accountant engaged by the lawyer ... so that the lawyer may better give legal advice, communications by the client reasonably related to th[ose] purpose[s] ought to fall within the privilege." *Id.*[6] This exception also protects documents

---

5. Congress has also established a limited privilege for communications between taxpayers and federally authorized tax practitioners. *See* 26 U.S.C. § 7525(a)(1)–(2) (Supp. V 1999). That privilege, however, does not apply here.

6. If, however, the client instead of the attorney hired a financial professional, communications between the attorney and the financial professional are protected by the attorney-client privilege only if the financial professional was effec-

tively an employee of the client. *In re Bieter Co.*, 16 F.3d 929, 937 (8th Cir.1994); *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 218–19 (S.D.N.Y.2001); *see generally* Kim J. Gruetzmacher, Comment, *Privileged Communications with Accountants: The Demise of United States v. Kovel*, 86 MARQ. L.REV. 977, 984–89 (2003) (analyzing developments of law regarding the attorney-client privilege).

produced as a result of those communications. *See id.*

This exception, however, only applies when communications are made "for the purpose of obtaining legal advice *from the lawyer.*" *Id.* (emphasis added). If the client seeks only accounting advice, or seeks the accountant's advice instead of the lawyer's, no privilege exists. *Id.* Moreover, a lawyer may not render communications between the attorney's client and the accountant privileged just by placing an accountant on his or her payroll. *Id.* at 921. A mere agency relationship between an attorney and an accountant will not automatically establish protection under the attorney-client privilege. *Id.* Nor will a general claim that an accountant does *some* work for an attorney suffice. *See id.* Instead, an attorney must prove that he or she hired an accountant for a specific purpose. *See id.* at 922. That purpose, in turn, must relate significantly to the disputed communications or documents. *See id.*

■ This circuit, like most, has adopted the *Kovel* test. *See United States v. El Paso Co.,* 682 F.2d 530, 541 (5th Cir.1982).[7] Thus, an attorney claiming the attorney-client privilege for communications between an attorney and an accountant or for documents prepared by an accountant for an attorney must prove that the accounting services enabled the giving of legal advice. *Davis,* 636 F.2d at 1043 n. 17; *see also United States v. Pipkins,* 528 F.2d 559, 562 (5th Cir.1976).

### 3. WAIVER BY INADVERTENT DISCLOSURE

■ Occasionally during the course of litigation, one party may inadvertently disclose documents protected by the attorney-client privilege to the opposing party. In determining whether an inadvertent disclosure waives the attorney-client privilege, courts must "consider the circumstances surrounding a disclosure on a case-by-case basis."

7. *See also In re Grand Jury Proceedings,* 220 F.3d 568, 571 (7th Cir.2000) (adopting the *Kovel* test); *United States v. Bornstein,* 977 F.2d 112, 116–17 (4th Cir.1992) (same); *Fed. Trade Comm'n v. TRW, Inc.,* 628 F.2d 207, 212 (D.C.Cir.1980) (same); *United States v. Cote,* 456 F.2d 142, 144 (8th Cir.1972) (same); *United States v. Judson,* 322 F.2d 460, 462–63 (9th Cir.1963) (same); *cf.*

*Alldread v. City of Grenada,* 988 F.2d 1425, 1434 (5th Cir.1993). No single fact is determinative. *See id.* Instead, courts consider many factors, including the following:

(1) the reasonableness of precautions taken to prevent disclosure;

(2) the amount of time taken to remedy the error;

(3) the scope of discovery;

(4) the extent of the disclosure;

(5) the overriding issue of fairness.

*Id.* at 1433 (citing *Hartford Fire Ins. Co. v. Garvey,* 109 F.R.D. 323 (N.D.Cal.1985)).

### E. WORK–PRODUCT DOCTRINE

#### 1. IN GENERAL

■ The federal work-product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3), which states the following:

Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

*Cavallaro v. United States,* 284 F.3d 236, 247 n. 6 (1st Cir.2002) (assuming, *arguendo,* that the First Circuit "would adopt the *Kovel* test or a similar standard"); *United States v. Alvarez,* 519 F.2d 1036, 1045 (3d Cir.1975) (citing *Kovel* approvingly and applying *Kovel* to psychiatric experts hired to assist counsel in the preparation of an insanity defense).

FED R. CIV. P. 26(b)(3). The work-product doctrine provides qualified protection of documents and tangible things prepared in anticipation of litigation, including "a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir.1991) (citing *Upjohn Co.*, 449 U.S. at 400, 101 S.Ct. 677; *El Paso Co.*, 682 F.2d at 543).

The party who asserts work-product protection must show that the materials warrant work-product protection. *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir.1985). Four elements must be established. First, the materials must be documents or tangible things. *See* 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2024, at 336 (2d ed.1994). Second, the materials must be prepared in anticipation of litigation or for trial. In other words, the party had reason to anticipate litigation and "the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir.2000) (citation and footnote omitted). Third, the materials must be prepared by or for a party's representative. FED.R.CIV.P. 26(b)(3). Fourth, if the party seeks to show that material is opinion work-product, that party must show that the material contains the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party. *Id.;* *see In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir.1982).

If a party proves that materials merit work-product protection, the party seeking discovery must prove why those materials should still be produced. *Hodges, Grant & Kaufmann*, 768 F.2d at 721. The party seeking discovery must establish:

1) a "substantial need of the materials in the preparation of the party's case;"[8] and

2) an inability "without undue hardship to obtain the substantial equivalent of the material by other means."[9]

Courts ordinarily apply the work-product doctrine only after deciding that the attorney-client privilege does not apply. *See Upjohn Co.*, 449 U.S. at 397, 101 S.Ct. 677. Conversely, when a court decides that documents and communications are protected by the attorney-client privilege, the work-product doctrine does not apply. *See, e.g., Swidler & Berlin v. United States*, 524 U.S. 399, 403 n. 1, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998) ("Because we sustain the claim of attorney-client privilege, we do not reach the claim of work product privilege.").

### 2. WAIVER

"[T]he work-product doctrine is distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). Unlike the attorney-client privilege, work-product protection is not automatically waived by disclosure to a third party who does not share a common legal interest. *Aiken v. Tex. Farm Bureau Mut. Ins. Co.*, 151 F.R.D. 621, 623 n. 2 (E.D.Tex.1993) (citing *Shields v. Sturm, Ruger & Co.*, 864 F.2d 379, 382 (5th Cir. 1989)). Instead, disclosure of work product results in waiver of work-product protection only if work-product is disclosed to adversaries or treated in a manner that substantially increases the likelihood that an adversary will come into possession of the material. *See High Tech Communications, Inc. v. Panasonic Co.*, 1995 U.S. Dist. LEXIS 2547, Civ. A. No. 94–1477, 1995 WL 83614, at *8 (E.D.La. Feb. 24, 1995) (citations omitted). Unlike the attorney-client privilege, the burden of proving waiver of work-product protection falls on the party asserting waiver. *Id.*

### III. ANALYSIS

### A. TOPICS 1(b) AND 4

ISC first argues that the testimony requested in topics 1(b) and 4 of Plaintiffs' Notice concerns information that is irrelevant to this case. Def.'s Mot. for Protective Order at 4. ISC claims that "Plaintiffs cannot

---

**8.** *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d at 1240 (quoting FED.R.CIV.P. 26(b)(3)).

**9.** *Id.* (quoting FED.R.CIV.P. 26(b)(3)).

show why testimony regarding revenues and profits from Winston Cup races at venues other than TMS is relevant to any of Plaintiffs' claims." *Id.* Second, ISC contends that this information, if disclosed to Plaintiffs, would prejudice ISC greatly. *Id.; see also* Def.'s Reply to Pls.' Resp. at 3. To support its second argument, ISC claims that this court already deemed this information prejudicial through its previous order that denied NASCAR's request for "[a]ll documents concerning the annual profitability and revenues generated by each racetrack in which [Speedway] holds an interest." Order Granting in Part and Denying in Part Def. NAS-CAR's Opposed Mot. to Compel Produc. of Docs. from Def. Speedway Motorsports, Inc. at 3 (Dkt. # 118). According to ISC, the court agreed with ISC's argument "that turning over the type of sensitive commercial information requested by the Plaintiffs in topics 1(b) and 4 would prejudice a competitor (even though there is a confidentiality agreement in place)." Def.'s Mot. for Protective Order at 3; Def.'s Reply to Pls.' Resp. at 2.

ISC misinterprets the court's previous order. In that order, the court denied NAS-CAR's request for two reasons. First, NAS-CAR did not "sufficiently articulate[ ] why information regarding the profitability of Speedway's other tracks is relevant to this lawsuit *that involves TMS*." Order Granting in Part and Denying in Part Def. NASCAR's Opposed Mot. to Compel Produc. of Docs. from Def. Speedway Motorsports, Inc. at 3 (emphasis added). Second, "Speedway would be prejudiced if it were compelled to produce this detailed financial information *to a competitor* ...." *Id.* at 3–4 (emphasis added). One must note, as ISC does, that this court's previous discovery order arose

"in the context of NASCAR's motion to compel." Def.'s Mot. for Protective Order at 3. This discovery dispute, however, involves a different situation.

First, Plaintiffs have articulated a logical reason why "information regarding ISC's revenues and profits from Winston Cup races" is material. But for the Defendants' unlawful actions, Plaintiffs claim, Speedway would have received a second annual Winston Cup race. Pls.' Second Am. Compl. at ¶¶ 52, 57, 60, 78 (Dkt. # 117). Plaintiffs seek as damages "the profits [Speedway] would have realized from a second premier NASCAR-format stock-car race." *Id.* at ¶ 78. Logically, information regarding the profitability of other Winston Cup races conducted on tracks owned and operated by ISC is relevant to help determine Plaintiffs' alleged damages.[10]

ISC does not ardently dispute the relevance of this information. Instead, in its reply, ISC offers two conclusory statements why the information regarding topics 1(b) and 4 is irrelevant. Def.'s Reply to Pls.' Resp. at 2. These two conclusory statements, made without supporting information or authority, do not show good cause. *See United States v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir.1978) (citations omitted). Where, as here, the damages alleged are lost profits from a NASCAR race that never occurred, profits and revenues at other NASCAR races that did occur is pertinent information.

■ The court also notes that evidence concerning ISC's revenues and profits at Winston Cup races relates to ISC's financial worth. Courts have consistently found that evidence of a defendant's financial worth is relevant, discoverable, and admissible at trial to evaluate a plaintiff's punitive damages claim.[11] Here, Plaintiffs seek punitive dam-

---

**10.** ISC has sought clarification of Plaintiffs' alleged damages and of Plaintiffs' damages theory. *See* Def.'s Mot. to Compel Interrog. Resps. from Pl. Francis Ferko & Brief in Support, Ex. B (Dkt. # 94) (Def. International Speedway Corporation's First Set of Interrogs. to Pl. Francis Ferko, p. 5) ("For each of the amounts claimed as damages in Interrogatory No. 1, describe in detail how such amounts were calculated."). The information ISC will produce pursuant to this order can only clarify Plaintiffs' damages model. Discovery of ISC's revenues and profits concerning other Winston Cup races will, at a minimum,

"lead to the discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1).

**11.** *See, e.g., United States v. Big D Enters.,* 184 F.3d 924, 932 (8th Cir.1999) ("Under federal law, evidence of a defendant's financial worth is traditionally admissible for the purpose of evaluating the amount of punitive damages that should be awarded." (citing *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 270, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981))); *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.,* 130 F.R.D. 149, 151 (D.Kan.1990) ("When a punitive

ages under section 15(a) of the Sherman Act, which provides treble damages for successful antitrust plaintiffs. Revenues and profits at ISC's Winston Cup races factor into ISC's net worth. This information will help Plaintiffs calculate their treble damages claim. Because Plaintiffs seek this information for purposes of a damages model, the court finds that the information requested in topics 1(b) and 4 is material and relevant.

Second, whatever prejudice ISC might conceivably suffer by having to designate an individual to testify at a deposition regarding topics 1(b) and 4 does not substantially outweigh the relevance of this information. Though the type of information requested by Plaintiffs is identical to the type of information requested by NASCAR, the alignment of parties in the previous discovery dispute and in this discovery dispute could not be more different.[12] The previous discovery dispute involved potential disclosure of information from a nominal defendant to a co-defendant. This discovery dispute, however, involves potential disclosure of information from a defendant to Plaintiffs. It is understandable that NASCAR, a co-defendant, could not articulate a valid purpose why information from Speedway, a nominal defendant, could be used to defend against Plaintiffs' claims. Here, by contrast, Plaintiffs seek detailed financial information from a defendant in order to refine a damages model. The difference is one of kind rather than one of degree, and it mandates a finding that the relevancy of this information is not substantially outweighed by any undue prejudice to ISC by having to disclose this information at a deposition.

Plaintiffs must act according to the Confidentiality Stipulation and Order. If any party to this lawsuit violates the Confidentiality Stipulation and Order, that party will be subject to sanctions by way of contempt of court and any additional relief the court may deem appropriate. Accordingly, ISC's motion for a protective order for topics 1(b) and 4 is DENIED. ISC is ORDERED to designate, within ten (10) days of entry of this order, the person or persons most knowledgeable to appear at a deposition and testify regarding topics 1(b) and 4.

## B. TOPICS 1(c) AND 5

▮ ISC claims that the documents requested by Plaintiffs in topics 1(c) and 5, as well as testimony regarding these topics, are protected by the attorney-client privilege. Def.'s Mot. for Protective Order at 3; Def.'s Resp. to Pls.' Mot. to Compel at 7–8. ISC argues that the attorney-client privilege applies because ISC's Chief Counsel, Glenn R. Padgett, retained AAA to help him render legal advice regarding anticipated litigation with the SEC concerning the implementation of SFAS Nos. 141 and 142. Def.'s Resp. to Pls.' Mot. to Compel at 8. ISC also claims that the work-product doctrine protects the documents requested by Plaintiffs in topics 1(c) and 5 because Padgett "relied upon ... AAA for preparation of materials in anticipation of litigation with the SEC regarding the implementation of SFAS Nos. 141 and 142." *Id.*, Ex. C (Decl. of Glenn R. Padgett at ¶¶ 6, 7, 8 & 11).

▮ An accountant-client privilege does not exist under federal law. *Couch v. United States,* 409 U.S. 322, 335, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). Attorneys may, however, divulge client information to accountants or financial professionals in order to represent their client more effectively. *United States v. El Paso Co.,* 682 F.2d 530, 541 (5th Cir.1982); *United States v. Kovel,* 296 F.2d

damages claim has been asserted by the plaintiff, a majority of federal courts permit pretrial discovery of financial information of the defendant without requiring plaintiff to establish a *prima facie* case on the issue of punitive damages." (citations omitted)).

12. ISC concedes that the court's previous order arose "in the context of NASCAR's Motion to Compel." Def.'s Mot. for Protective Order at 3. Despite this concession, however, ISC generalizes the court's previous order and claims repeatedly that the court has already decided this current discovery dispute. *See* Def's Mot. for Protective Order at 4 ("Given that the court has ruled that *this information* is prejudicial, ... ISC requests that the Court enter a protective order ...." (emphasis added)); Def.'s Reply to Pls.' Resp. at 2 ("[T]he Court has already found that disclosure in this case of detailed information related to revenues generated by racetracks would be prejudicial to the party required to disclose it."). This assertion by ISC stretches the court's previous ruling.

918, 922 (2d Cir.1961). So long as an attorney hires an accountant or financial professional for a specific purpose that relates significantly to the disputed communications or documents at issue, any documents disclosed to such a professional and any communications regarding those documents are privileged. *El Paso Co.*, 682 F.2d at 541; *Kovel*, 296 F.2d at 922.

 Here, Padgett hired AAA to advise him on issues regarding SFAS Nos. 141 and 142 and the characterization of sanction agreements. Def.'s Resp. to Pls.' Mot. to Compel at 7. AAA employees helped translate complicated financial information for Padgett. *See Kovel*, 296 F.2d at 922. This translation of financial information enabled Padgett to represent ISC effectively.[13] Padgett hired AAA to "investigate and appraise the economic value of sanction agreements for races held at [ISC's] tracks." Pls.' Mot. to Compel at 2. This purpose relates directly to the documents requested in topics 1(c) and 5 because topics 1(c) and 5 both concern "[t]he investigation and/or appraisal of sanction agreements as intangible assets pursuant to Statement of Financial Accounting Standards Nos. 141 and/or 142". Def.'s Mot. for Protective Order, Ex. A (Pls.' Rule 30(b)(6) Dep. Notice, p. 4).

 Padgett admittedly did not hire AAA for this particular lawsuit. The work done by AAA for Padgett, however, concerned potential litigation with the SEC regarding an economic issue that also exists in this case. An attorney need not hire an accountant or financial professional solely for a particular lawsuit or discovery dispute to gain protection under the attorney-client privilege. *See United States v. Pipkins*, 528 F.2d 559, 562 (5th Cir.1976). Instead, the purpose for which the lawyer hired the accountant or financial professional must relate significantly to the documents and communications at issue in subsequent litigation. *See El Paso Co.*, 682 F.2d at 541; *Kovel*, 296 F.2d at 922. Here, the purpose for which Padgett hired AAA relates directly to and parallels the disputed documents and communications at issue in Plaintiffs' Rule 30(b)(6) Notice. Plaintiffs concede as much. *See* Pls.' Reply to Def.'s Resp. at 5 ("[D]ocuments relating or referring to the investigation and/or appraisal of sanction agreements as intangible assets pursuant to SFAS Nos. 141 and/or 142 are highly relevant to Plaintiffs' claims...."). Thus, the documents requested under topics 1(c) and 5 and testimony regarding those documents are protected by the federal attorney-client privilege. *See El Paso Co.*, 682 F.2d at 541; *Kovel*, 296 F.2d at 922.

 Padgett's disclosure of documents to and communications with Ernst & Young also pass the *Kovel* test.[14] Like AAA, Ernst & Young was hired for a specific purpose: to audit documents related to SFAS Nos. 141 and 142 "in anticipation of future litigation with the SEC." Def.'s Resp. to Pls.' Mot. to Compel, Ex. B (Decl. of Glenn R. Padgett at ¶ 14). In a lawsuit that involves analysis of financial statements and disclosure of lengthy financial records, like this one, it logically follows that attorneys will have the financial statements of the companies which they represent audited. *Cf. Kovel*, 296 F.2d at 922. Such assistance by an accounting

---

**13.** Padgett's role as ISC's Chief Counsel for Operations and Assistant Secretary does not change the court's analysis of this issue. Attorneys who work as in-house counsel do not waive the attorney-client privilege because of their status as in-house counsel. The attorney-client privilege applies if the client is a corporation; an attorney's status as in-house counsel neither dilutes nor waives the privilege. *In re Sealed Case*, 737 F.2d 94, 99 (D.C.Cir.1984) ("The lawyer whose testimony the government seeks in this case served as in-house attorney. That status alone does not dilute the privilege."); *cf. Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ("This court has always assumed that the privilege applies when the client is a corporation, ... and the Government does

not contest the general proposition." (citation omitted)).

**14.** Because this case involves a federal question, the federal common law of attorney-client privilege applies. *Caver v. City of Trenton*, 192 F.R.D. 154, 160 (D.N.J.2000); *Smith v. Smith*, 154 F.R.D. 661, 671 (N.D.Tex.1994). ISC, however, states the following: "Based on the Florida accountant-client privilege, ISC had an expectation that confidentiality and privilege would be preserved for any AAA documents disclosed to E & Y." Def.'s Resp. to Pls.' Mot. to Compel at 10 (citation omitted). Florida's privilege law, however, is irrelevant to the current dispute.

firm enables attorneys to "give sound and informed advice." *Upjohn Co. v. United States,* 449 U.S. 383, 390, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

■ Padgett retained Ernst & Young's accountants to "serve as [ ] listening post[s]," *id.,* and interpret documents related to SFAS Nos. 141 and 142. Additionally, Ernst & Young's accountants helped translate financial information for Padgett "into a form intelligible to a lawyer at a lawyer's behest." *El Paso Co.,* 682 F.2d at 541. Thus, the documents given to Ernst & Young by Padgett and all communications related to those documents are protected by the federal attorney-client privilege. *See El Paso Co.,* 682 F.2d at 541; *Kovel,* 296 F.2d at 922. Because the court sustains ISC's claim of attorney-client privilege for the documents and testimony requested by topics 1(c) and 5, the court does not reach ISC's work-product claim. *Swidler & Berlin v. United States,* 524 U.S. 399, 403 n. 1, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998).[15]

■ ISC did, however, inadvertently disclose these two documents to Plaintiffs during discovery. Def.'s Resp. to Pls.' Mot. to Compel at 2. In determining whether an inadvertent disclosure of documents waives the attorney-client privilege, courts "consider the circumstances surrounding a disclosure on a case-by-case basis. . . ." *Alldread v. City of Grenada,* 988 F.2d 1425, 1434 (5th Cir. 1993). No one fact is conclusive. *See id.* Factors courts consider include the following:

(1) the reasonableness of precautions taken to prevent disclosure;

(2) the amount of time taken to remedy the error;

(3) the scope of discovery;

(4) the extent of the disclosure;

(5) the overriding issue of fairness.

*Id.* at 1433 (citing *Hartford Fire Ins. Co. v. Garvey,* 109 F.R.D. 323 (N.D.Cal.1985)).

Applying these factors to this case, the court concludes that ISC's inadvertent disclosure of the two documents Bates-stamped ISC 00033518–33584 and ISC 00033585 does not waive the attorney-client privilege. The first factor, the reasonableness of the precautions taken to prevent inadvertent disclosure, favors ISC. ISC utilized a team of attorneys that reviewed all documents to be produced and organized those documents into separate categories. Def.'s Resp. to Pls.' Mot. to Compel, Ex. B (Decl. of Guy I. Wade, III, at ¶ 3). ISC additionally marked many documents, including the two documents at issue, as "Highly Confidential." *Id.,* Ex. B (Decl. of Guy I. Wade, III, at ¶ 3). These two documents, though set aside to be marked as privileged, inadvertently ended up in one of the boxes of documents produced to Plaintiffs. *Id.,* Ex. B (Decl. of Guy I. Wade, III, at ¶ 5). ISC must establish that it took precautions to prevent disclosure of the two documents. Having considered the circumstances of this case, the court finds that ISC has met that burden.

The second factor, the amount of time taken to remedy the error, also favors ISC. ISC inadvertently disclosed both documents to Plaintiffs on or about March 31, 2003. *Id.,* Ex. B (Decl. of Guy I. Wade, III, at ¶ 2). ISC discovered this error on or about April 14, 2003. *Id.,* Ex. B (Decl. of Guy I. Wade, III, at ¶ 6). Four days after discovering this error, ISC contacted counsel for Plaintiffs and requested that Plaintiffs return both documents. *Id.,* Ex. B (Decl. of Guy I. Wade, III, at ¶ 7). Because ISC promptly requested that Plaintiffs return both documents, this factor also favors ISC. *See Myers v. City of Highland Village,* 212 F.R.D. 324, 327 (E.D.Tex.2003) (noting that approximate-

---

15. Even assuming, *arguendo,* that an ISC official not affiliated with ISC's legal department hired AAA and Ernst & Young, the attorney-client privilege would still protect documents given to AAA and Ernst & Young by ISC and all communications related to those documents. If the client instead of the attorney hires a financial professional, the attorney-client privilege protects communications between the attorney and that financial professional if that financial professional is effectively an employee of the client. *See, e.g., In re Bieter Co.,* 16 F.3d 929, 937 (8th Cir.1994); *In re Copper Mkt. Antitrust Litig.,* 200 F.R.D. 213, 218–19 (S.D.N.Y.2001). On this record, the court concludes that AAA and Ernst & Young employees would qualify as effective ISC employees because of the extensive financial work that AAA and Ernst & Young employees did for ISC. Thus, the attorney-client privilege would also protect ISC in that situation.

ly three weeks is a reasonable response time).

The third factor, the scope of discovery, plainly favors ISC. ISC produced approximately 63,000 pages of documents on March 31, 2003. *Id.,* Ex. B (Decl. of Guy I. Wade, III, at ¶ 2). To date, ISC has produced more than 78,000 pages of documents. *Id.,* Ex. B (Decl. of Guy I. Wade, III, at ¶ 2). Considering the massive scope of discovery in this case, ISC's inadvertent production of two privileged documents is understandable. *See Myers,* 212 F.R.D. at 327 (concluding that the scope of discovery favored the party who had inadvertently disclosed privilege documents because approximately 1,500 pages of documents were produced); *Lazar v. Mauney,* 192 F.R.D. 324, 330 (N.D.Ga.2000) (concluding that production of 1,000 pages of documents is voluminous). This factor weighs in favor of ISC.

The fourth factor, the extent of the disclosure, also favors ISC. ISC inadvertently produced two privileged documents out of approximately 63,000 pages of documents. *Id.,* Ex. B (Decl. of Guy I. Wade, III, at ¶ 2, ¶ 3). The percentage of privileged documents in this case is far less than in other cases where courts have found that no waiver has occurred. *See Myers,* 212 F.R.D. at 327–28; *Lazar,* 192 F.R.D. at 330; *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 104 F.R.D. 103, 105 (S.D.N.Y.1985). This factor also favors ISC.

Finally, the fifth factor, fairness, favors ISC. Courts cannot ignore the importance of and the policies underlying the attorney-client privilege. *Myers,* 212 F.R.D. at 328. The attorney-client privilege "is intended to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." *Swidler & Berlin v. United States,* 524 U.S. 399, 403, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998) (citing *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)). Moreover, "[a] party to whom privileged documents are pro-

duced inadvertently has no inherent 'fairness' interest in keeping them." *Myers,* 212 F.R.D. at 328. Plaintiffs have no legitimate interest in keeping documents labeled as "Highly Confidential." Consequently, this factor also favors ISC. Having considered the five factors regarding inadvertent disclosure-all of which favor ISC-and the circumstances of this case, the court finds that ISC did not waive the attorney-client privilege due to its inadvertent production of the documents bearing Bates numbers ISC 00033518–33584 and ISC 00033585.

The documents ISC disclosed to AAA and Ernst & Young and all communications relating to those documents are not discoverable because they are protected by the federal attorney-client privilege. ISC's inadvertent disclosure of the two documents Bates-stamped ISC 00033518–33584 and ISC 00033585 does not waive the attorney-client privilege. Consequently, ISC's motion for a protective order is GRANTED for topics 1(c) and 5. ISC need not designate a witness to testify at a deposition regarding these two topics. Plaintiffs are ORDERED to return the documents Bates-stamped ISC 00033518–33584 and ISC 00033585 to ISC within ten (10) days of entry of this order. Plaintiffs may not mention, utilize or rely on the documents Bates-stamped ISC 00033518–33584 and ISC 00033585 [16] in any way for any purpose.

### C. TOPICS 2(a), 6(k), 6(*l*), AND 9

■ ISC failed to designate a witness to testify on topics 2(a), 6(k), 6(*l*), and 9. Def.'s Mot. for Protective Order, Ex. C (Letter of August 15, 2003 from Melissa J. Swindle to Brent W. Landau, pp. 1–2). ISC filed a timely motion for a protective order addressing topics 1(b), 1(c), 4, and 5. *Id.* at 1–4. In that motion, however, ISC advances no arguments regarding topics 2(a), 6(k), 6(*l*), and 9. *Id.* at 3–5. These four topics simply go unmentioned. *Id.* Thus, the issue before this court is whether ISC's motion satisfies Rule 37(d)'s requirement of a "pending motion for a protective order" for topics 2(a), 6(k), 6(*l*), and 9 even though that motion does not state

---

**16.** In its response to Plaintiffs' motion to compel, ISC occasionally refers to these two documents as "bates labeled ISC 33518–33584" and "bates labeled ISC 33585." Def.'s Resp. to Pls.' Mot. to Compel. at 2. Either classification refers to the same two documents.

why a protective order is needed for those topics.

During the discovery process, parties against whom discovery is sought must timely designate witnesses to testify and have those witnesses testify at depositions. FED. R.CIV.P. 26(c); FED.R.CIV.P. 37(d). A failure to act "may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c)." FED.R.CIV.P. 37(d). The phrase "failure to act" in Rule 37(d) includes a failure to designate a witness to testify at a deposition. *Bregman v. District of Columbia*, 182 F.R.D. 352, 355 n. 3 (D.D.C.1998). Thus, if a party fails to designate a witness to appear at a deposition, that party has violated Rule 37(d) unless that party has moved for a protective order. *Id.*

■ A party failing to designate a witness to testify at a deposition must "ha[ve] a pending motion for a protective order *as provided by Rule 26(c)*." FED.R.CIV.P. 37(d) (emphasis added). A district court grants a motion for a protective order "for good cause shown." FED.R.CIV.P. 26(c). Thus, a motion for a protective order that shows no cause-or fails to mention why a deposition on disputed topics should not occur-will not be granted. *See* 8 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE § 2035, at 483–84 (2d ed. 1994) ("[Rule 26(c)] requires that good cause be shown for a protective order. This puts the burden on the party seeking relief to show *some* plainly adequate reason therefor." (footnotes omitted) (emphasis added)). It is difficult to conceive how a party could satisfy Rule 37(d)'s requirement of a "pending motion for a protective order" by filing a motion that does not even attempt to show good cause. *Cf. id.*

■ An organization named in a Rule 30(b)(6) notice of deposition "shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, *and may set forth, for each person designated, the matters on which the person will testify*." FED.R.CIV.P. 30(b)(6) (emphasis added). Situations exist under Rule 30(b)(6) where a corporate organization

designates different individuals to testify regarding different topics. *Cf. Nutmeg Ins. Co. v. Atwell, Vogel & Sterling*, 120 F.R.D. 504, 508 (W.D.La.1988). When a Rule 30(b)(6) deposition notice references multiple topics, the party named in the deposition notice must either move for a protective order regarding each topic or designate a person to testify regarding each topic. *See id.; see also Bregman*, 182 F.R.D. at 354–55.

Having researched the applicable law, the court has not found a case in which a party's motion for a protective order failed to mention why a protective order was needed for certain discovery topics. If the court interpreted Rule 37(d) literally, the court would conclude that ISC satisfied Rule 37(d) by filing a "pending motion for protective order," albeit an incomplete one. This Circuit, however, has rejected a literal interpretation of Rule 37(d) in a similar situation. In *Resolution Trust Corporation v. Southern Union Co., Inc.*, 985 F.2d 196 (5th Cir.1993), RTC received a deposition notice from Southern Union and designated two witnesses to testify at depositions. *Id.* Immediately after counsel for Southern Union began questioning the first witness, it became apparent that RTC's first witness "possessed no knowledge relevant to the subject matters identified in the Rule 30(b)(6) notice." *Id.* RTC's second witness was equally unprepared. *Id.*

Southern Union moved for sanctions against RTC, claiming that "RTC's designation of the first two witnesses was tantamount to a complete failure of the corporation to appear." *Id.* at 197. RTC claimed that it had literally complied with Rule 37(d) because it had designated an individual who appeared at a deposition. *Id.* Thus, the RTC argued that it had not violated Rule 37(d)'s prohibition against a witness's failure to appear at a deposition. *Id.* The district court, however, granted Southern Union's motion for sanctions and awarded Southern Union costs and fees incurred in deposing the two witnesses. *Id.* at 196.

The Fifth Circuit rejected RTC's argument that it had complied with Rule 37(d) and upheld the district court's order imposing sanctions on RTC. *Id.* at 197–98. Writ-

ing for the court, Judge Politz stated as follows: "If that [corporate] agent is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all." *Id.* at 197. Because RTC failed to prepare its witness adequately for the deposition, the witness's unhelpful deposition testimony constituted a failure to appear at that deposition. *Id.* Because RTC violated Rule 37(d), the court held that "[t]he district court did not abuse its discretion in awarding fees and costs under Rule 37(d)." *Id.* at 198 (footnote omitted). This circuit's pragmatic interpretation of the phrase "fails ... to appear" in Rule 37(d) has been met with approval by other courts.[17]

This case presents a similar situation. ISC's failure to include arguments regarding topics 2(a), 6(k), 6(*l* ), and 9 in its motion for a protective order is tantamount to not filing a motion for a protective order on those topics. *See id.* at 197; *cf. Bregman v. District of Columbia*, 182 F.R.D. 352, 354–55 (D.D.C.1998); *Nutmeg Ins. Co. v. Atwell, Vogel & Sterling*, 120 F.R.D. 504, 508 (W.D.La.1988). ISC neither designated a witness for topics 2(a), 6(k), 6(*l* ), and 9 nor moved for a protective order for topics 2(a), 6(k), 6(*l* ), and 9. *See* Def's Mot. for Protective Order at 1–4. Thus, like RTC in *South-*

ern Union, ISC violated Rule 37(d). *See S. Union Co., Inc.*, 985 F.2d at 197.

Interpreting Rule 37(d)'s requirement of a "pending motion for a protective order" literally would ignore the policies embodied in Rule 37(d). Under this literal interpretation of Rule 37(d), a party could file an incomplete motion for a protective order that discusses only a few or some disputed discovery topics yet gain an unearned extension of time to address other disputed discovery topics. Instead of being found in violation of Rule 37(d), however, that party would simply gain more time to designate a witness.[18] These events would transpire while the court considered a motion for a protective order that, unless amended, didn't argue why a protective order is needed for disputed discovery topics. *Cf. Bregman*, 182 F.R.D. at 355 n. 3. The court declines to interpret the phrase "pending motion for a protective order" in Rule 37(d) literally because doing so would allow and implicitly encourage dilatory tactics.

To satisfy Rule 37(d)'s requirement of a "pending motion for a protective order" for each disputed deposition topic, the party filing a motion for a protective order must state why a motion for a protective order is needed for each disputed deposition topic. *Cf. Bregman*, 182 F.R.D. at 354–55; *cf., e.g., Nutmeg Ins. Co.*, 120 F.R.D. at 508. ISC's motion for a protective order only addressed topics 1(b), 1(c), 4, and 5. Thus, ISC's motion

**17.** *Black Horse Lane Assoc., L.P. v. Dow Chem. Corp.*, 228 F.3d 275, 304 (3d Cir.2000) ("In reality if a Rule 30(b)(6) witness is unable to give useful information he is no more present for the deposition than would be a deponent who physically appears for the deposition but sleeps through it."); *United States v. Taylor*, 166 F.R.D. 356, 363 (M.D.N.C.) ("Producing an unprepared witness is tantamount to a failure to appear." (citing *S. Union Co., Inc.*, 985 F.2d at 197)), *aff'd*, 166 F.R.D. 367 (1996); *cf. Starlight Int'l, Inc. v. Herlihy*, 186 F.R.D. 626, 639 (D.Kan.1999) ("The court may find lack of preparation at a deposition to be a failure to appear."). Other Circuits, however, interpret Rule 37(d) literally. *Estrada v. Rowland*, 69 F.3d 405, 406 (9th Cir.1995) ("Estrada attended his deposition but refused to testify. This is not a 'failure to appear' for the purposes of Rule 37(d)."); *Aziz v. Wright*, 34 F.3d 587, 589 (8th Cir.1994) (concluding that "Rule 37(d) should be strictly construed"); *R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 15 n. 2 (1st Cir.1991) ("We note that 'failure to appear'

for a deposition is strictly construed and Rule 37(d) sanctions apply only when a deponent 'literally fails to show up for a deposition session.' " (citations omitted)); *Salahuddin v. Harris*, 782 F.2d 1127, 1131 (2d Cir.1986) (same); *Stevens v. Greyhound Lines, Inc.*, 710 F.2d 1224, 1228 (7th Cir.1983) (same).

**18.** Similarly, other circuits have held that the remedy for an unprepared witness at a deposition is "an order from the court, as authorized by Rule 37(a), directing [that witness] to be sworn and testify." *Salahuddin*, 782 F.2d at 1131 (quoting *SEC v. Research Automation Corp.*, 521 F.2d 585, 588–89 (2d Cir.1975)). This interpretation of Rule 37(d) merely delays the discovery process. More importantly, this interpretation implicitly rewards the party who failed to prepare its witness adequately by granting that party additional time to accomplish what it should have already accomplished. *See S. Union Co., Inc.*, 985 F.2d at 197–98.

for a protective order does not extend to topics 2(a), 6(k), 6(*l*), and 9. *Cf. Bregman,* 182 F.R.D. at 354–55; *Nutmeg Ins. Co.,* 120 F.R.D. at 508. By neither designating a witness for topics 2(a), 6(k), 6(*l*), and 9 nor moving for a protective order regarding topics 2(a), 6(k), 6(*l*), and 9, ISC's conduct "was literally inexcusable under the Federal Rules of Civil Procedure." *Bregman,* 182 F.R.D. at 355. Thus, ISC violated Rule 37(d). FED. R.CIV.P. 37(d); *see Bregman,* 182 F.R.D. at 355 & n. 3.

 ISC did, however, object to topics 2(a), 6(k), 6(*l*), and 9, claiming it had no institutional knowledge regarding topics 2(a), 6(k), and 6(*l*), and claiming it had "not formed such views and/or opinions" regarding topic 9. Def.'s Mot. for Protective Order, Ex. C (Letter of August 15, 2003 from Melissa J. Swindle to Brent W. Landau, pp. 1–2). These objections, however, do not satisfy the requirements of Rule 37(d). *See Bregman,* 182 F.R.D. at 355; *Philpot v. Philco–Ford Corp.,* 63 F.R.D. 672, 674 (E.D.Pa.1974). The only pre-deposition protest allowed by the Federal Rules of Civil Procedure is a motion for a protective order. FED.R.CIV.P. 37(d); *Bregman,* 182 F.R.D. at 355. Consequently, ISC's objections to topics 2(a), 6(k), 6(*l*), and 9 are unavailing. *See Bregman,* 182 F.R.D. at 355.[19]

 Even assuming, *arguendo,* that ISC's improper objections to topics 2(a), 6(k), 6(*l*), and 9 are incorporated by reference in its motion for a protective order, the court finds that ISC has not shown good cause. Because the movant for a protective order bears the burden of proof, the movant must make "a particular and specific demonstration of fact" instead of "stereotyped and conclusory statements." *United States v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir.1978)

(citations omitted). ISC, however, provides no specific factual allegations either in its motion for a protective order or in its reply of hardship or undue expense. *See* Def.'s Mot. for Protective Order, Ex. C (Letter of August 15, 2003 from Melissa J. Swindle to Brent Landau, Esq., pp. 1–2); Def.'s Reply to Pls.' Resp. at 4–5.

Even if they are incorporated by reference in its motion for a protective order, ISC's objections to topics 2(a), 6(k), 6(*l*), and 9 constitute "stereotyped and conclusory statements." *Garrett,* 571 F.2d at 1326 n. 3. None of these conclusory statements shows good cause. *See id.* Assuming, *arguendo,* that ISC filed a motion for a protective order regarding topics 2(a), 6(k), 6(*l*), and 9, ISC's motion is DENIED for topics 2(a), 6(k), 6(*l*), and 9. ISC is ORDERED to designate, within ten (10) days of entry of this order, the person or persons most knowledgeable to appear at a deposition and testify regarding topics 2(a), 6(k), 6(*l*), and 9.[20]

## IV. CONCLUSION

For all the reasons previously stated, Plaintiffs' Opposed Motion to Compel is GRANTED IN PART. ISC's Motion for a Protective Order is GRANTED for topics 1(c) and 5. Because testimony regarding topics 1(c) and 5 covers documents and communications protected by the attorney-client privilege, ISC does not have to designate an individual to testify regarding topics 1(c) and 5. Plaintiffs are ORDERED to return the documents that are Bates-stamped ISC 00033518–33584 and ISC 00033585 to ISC within ten (10) days of entry of this order. Plaintiffs may not mention, utilize or rely on the documents Bates-stamped ISC 00033518–33584 and ISC 00033585 in any way for any purpose.

---

**19.** In its reply to Plaintiffs' response, ISC repeats the same objection to topic 2(a) despite neither moving for a protective order for topic 2(a) nor designating a witness to testify regarding topic 2(a). Def.'s Reply to Pls.' Resp. at 4–5. Thus, ISC remains in violation of Rule 37(d) for topic 2(a). *See Bregman,* 182 F.R.D. at 355. ISC also contends that topics 6(k), 6(*l*), and 9 are moot because ISC designated John Saunders to testify about why ISC has no information about those topics at his deposition on August 27, 2003. Def.'s Reply to Pls.' Resp. at 5. It may well be

that no ISC official possesses relevant information about topics 6(k), 6(*l*), and 9. ISC's belated designation of Saunders, does not excuse ISC's violation of Rule 37(d).

**20.** Because Plaintiffs did not request reimbursement of reasonable expenses pursuant to Rule 37(d), the court does not consider the question of whether an award of reasonable expenses would be proper.

ISC's motion for a protective order is DE-NIED for topics 1(b) and 4. Assuming, *arguendo,* that ISC filed a motion for a protective order regarding topics 2(a), 6(k), 6(*l* ), and 9, ISC's motion is DENIED for topics 2(a), 6(k), 6(*l* ), and 9. ISC is ORDERED to designate, within ten (10) days of entry of this order, the person or persons most knowledgeable to appear at a deposition and testify regarding topics 1(b), 2(a), 4, 6(k), 6(*l* ), and 9.

It is so ORDERED.